IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITIES COMMISSION, | ) ) ) | CIVIL NO. 11-00799 LEK-BMK |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| LA RANA HAWAII, LLC D/B/A SENOR FROG'S and ALTRES, INC., DOE 1-15, INCLUSIVE, | ) ) ) ) | |
| Defendants. | ) ) ) | |

ORDER(1) GRANTING IN PART AND DENYING IN PART
DEFENDANT ALTRES, INC.'S MOTION TO DISMISS COMPLAINT
FILED DECEMBER 30, 2011 AND (2) GRANTING DEFENDANT LA RANA
HAWAII, LLC'S MOTION TO DISMISS COMPLAINT FILED DECEMBER 30, 2011

Before the Court is Defendant ALTRES, Inc.'s ("ALTRES")

Motion to Dismiss Complaint Filed December 30, 2011 ("ALTRES

Motion"), filed on March 15, 2012, [dkt. no. 14,] and Defendant

La Rana Hawaii, LLC's ("La Rana") Motion to Dismiss Complaint

Filed December 30, 2011 ("La Rana Motion"), filed on April 26,

2012 [dkt. no. 30].  Plaintiff United States Equal Employment

Opportunity Commission ("EEOC") filed its memoranda in opposition

on July 9, 2012, [dkt. nos. 41, 42,] and ALTRES and La Rana

(collectively, "Defendants") filed their respective replies on

July 16, 2012 [dkt. nos. 45, 46].  These matters came on for

hearing on July 30, 2012.  Appearing on behalf of the EEOC were

Michael J. Farrell, Esq., and Amrita Mallik, Esq.; appearing on

behalf of La Rana were Barbara A. Petrus, Esq., and Anne T.

Horiuchi, Esq.; and appearing on behalf of ALTRES were Andrew L. Pepper, Esq., and Laura J. Maechtlen, Esq.  After careful consideration of the motions, supporting and opposing memoranda, and the arguments of counsel, the ALTRES Motion is HEREBY GRANTED IN PART AND DENIED IN PART and the La Rana Motion is HEREBY GRANTED for the reasons set forth below.

### BACKGROUND

I.   **The Complaint**

The EEOC's Complaint against Defendants alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 ("Title I") for "unlawful employment practices on the basis of sex (female) and retaliation, and [] to provide appropriate relief to a class of female employees similarly situated to Charging Party Heather Colletto (collectively, the 'Claimants') who were adversely affected by such practices." [Complaint at pg. 1.]  The EEOC alleges that Defendants subjected Claimants to unwelcome physical and verbal sexual conduct, disparate treatment, constructive discharge, and retaliation on the basis of sex.  [Id. at pg. 2.]

The EEOC alleges that, during the relevant period between 2007 and 2008, ALTRES was under contract with La Rana for employment-related services, and Defendants were joint employers that "generally controlled the terms and conditions of the employment of the Claimants."  [Id. at ¶ 8.]  It argues that

2

Defendants: (1) jointly hired and managed non-management employees; (2) shared common management over non-management employees, who were employed by both ALTRES and La Rana; (3) gave non-management employees an employee handbook containing sexual harassment policies created by ALTRES; and (4) instructed employees to direct complaints of sexual harassment to ALTRES, which investigated such allegations.  [Id.]

At some unspecified time, employee Heather Colletto filed charges with the EEOC alleging violations of Title VII by La Rana and ALTRES.  [Id. at ¶¶ 12, 15.]  The EEOC investigated the charges and issued a Letter of Determination finding that Defendants subjected Colletto and a class of other similarly situated female employees to a hostile work environment, disparate treatment, constructive discharge, and retaliation in violation of Title VII.  [Id. at ¶¶ 13, 15, 16.]  The EEOC claims that it attempted to eliminate the allegedly unlawful employment practices and effect voluntary compliance with Title VII.  [Id. at ¶ 17.]

The EEOC argues that, since at least 2007, Defendants engaged in unlawful employment practices in violation of Sections 703 and 704 of Title VII, 42 U.S.C. §§ 2000e-2 and 2000e-3.  As to Section 703, the EEOC alleges "unwelcome sexual conduct, constructive discharge, and disparate treatment against females" that were "sufficiently severe and pervasive to adversely affect

3

the terms and conditions of their employment and create a hostile, abusive work environment." [Id. at ¶ 20.] The EEOC alleges that: (1) there existed sexually explicit remarks by the owner toward a female server; sexual advances and demands by management officials to female employees; and sexual comments and unwanted touching of female employees' breasts and buttocks; (2) the conduct was unwelcome, and the female employees tried to rebuff or avoid the unwelcome conduct; (3) the sexual harassment was sufficiently severe and pervasive to create a hostile work environment; and (4) the female employees took steps to stop the harassment and complained to Defendants' management officials, but Defendants "failed to take reasonable steps to prevent and correct the harassment, but instead engaged in tangible employment actions of reducing the female employees' hours, giving them less favorable working conditions, terminating them and/or causing their constructive discharge[.]" [Id.]

Also regarding Section 703, the EEOC contends that Defendants subjected Colletto and other female employees to disparate treatment, as evidenced when Defendants assigned female employees to shorter work shifts, afforded them less desirable assignments with less earning opportunities, and stationed female employees only in certain areas of the restaurant. The EEOC also alleges that "Senor Frog's Human Resource Manager made [Defendants'] anti-female animus clear when at a meeting wherein

4

other management [officials] explored the possibilities of hiring additional female bartenders, the Human Resources Manager disapprovingly rejected the idea saying he did not want more females as they were too much 'drama[.]'" [Id. at ¶ 22(c).]

As to Section 704, the EEOC alleges that Defendants retaliated against Colletto and other female employees for complaining of the hostile work environment: (1) female employees engaged in a protected activity when they complained of the unlawful sexual harassment to Defendants' management officials; (2) Defendants reduced female employees' work hours, gave them less favorable working conditions, and harassed them at work; and (3) Defendants constructively discharged Colletto for engaging in a protected activity, while similarly situated employees who did not complain did not face retaliation. [Id. at ¶ 21.]

The EEOC requests that the Court: (1) issue a permanent injunction enjoining Defendants from engaging in employment practices or retaliation that discriminate on the basis of sex; (2) order that Defendants institute and carry out policies, practices, and programs that provide equal employment opportunities; (3) order that Defendants pay backpay with prejudgment interest and other appropriate relief; (4) order that Defendants pay appropriate past and future pecuniary losses, and/or other appropriate relief; (5) order that Defendants pay compensation for past and future non-pecuniary losses; (6) order

Defendants to pay punitive damages; (7) grant further relief as necessary; and (8) award the EEOC its costs. [Id. at pgs. 10-11.]

## II.  **The Conciliation Process**

Both the ALTRES Motion and the La Rana Motion discuss the EEOC's investigation and correspondence with Defendants preceding the instigation of the present action.

According to ALTRES, it received a copy of the EEOC's Charge of Discrimination ("Charge") on or around December 29, 2008.  With respect to ALTRES, the Charge alleged that ALTRES ratified the hostile work environment and Colletto's constructive discharge by not taking "reasonable and/or necessary measures" to put a stop to the alleged wrongdoing.  [Mem. in Supp. of ALTRES Motion at 2-3.]

The EEOC issued its Letter of Determination on or around June 27, 2011, in which it stated that, regarding Colletto's charges of discrimination:

> No finding has been made with regards to Charging Party's allegations.
>
> The Commission has determined that there is reasonable cause to believe that a class of female employees were subjected to sexual harassment, intimidation, adverse terms & conditions of employment and constructive discharge because of their sex, female and/or in retaliation for engaging in protected activity.

[ALTRES Motion, Decl. of Andrew Pepper ("Pepper Decl."), Exh. 2

(emphasis omitted).]

On or around July 29, 2011, the EEOC wrote:

The policies, procedures, and/or
practices that ALTRES had during this period
with respect to addressing discrimination and
harassment occurring at a client's worksite
failed to prevent the discrimination that
occurred in this case.  As such, it is
necessary for ALTRES to revise and/or
implement measures to ensure the proper
handling of such discrimination or harassment
at a client's worksite.  The injunctive
relief proposed in the attached Agreement
seeks to achieve that goal.

The Commission is seeking monetary
relief for a class of aggrieved individuals,
to include the following:

1)   Payment of $800 to Ms. Beverly Subia.
     This amount represents lost wages.

2)   Payment of $200,000 for each of the two
     (2) identified Class Member [sic], Ms.
     Beverly Subia and Ms. Connie Sanchez.
     This amount constitutes non-pecuniary
     compensatory damages (emotional
     distress, pain and suffering) for any
     other aggrieved individuals identified
     by the EEOC.

3)   Establishment of a Class Fund in the
     amount of $500,000.  This amount
     constitutes economic damages (lost
     wages, benefits, etc.) and non-pecuniary
     compensatory damages (emotional
     distress, pain and suffering) for any
     other aggrieved individuals identified
     by the EEOC.

[Pepper Decl., Exh. 3.]  ALTRES responded by submitting a Freedom

of Information Act ("FOIA") request for information regarding the

alleged "class of aggrieved individuals" and "the bases for the

7

EEOC's cause finding as to how the EEOC formulated its conciliation demand." [Mem. in Supp. of ALTRES Motion at 5 (quoting Pepper Decl., Exh. 4).]  The EEOC denied the FOIA request on the ground that disclosure could interfere with law enforcement proceedings.  [Id. (citing Pepper Decl., Exh. 5).]

Regarding the EEOC's investigation, ALTRES points to correspondence from the EEOC dated August 19, 2011, in which the EEOC represented that it reviewed documents and interviewed Colletto and relevant witnesses.  The EEOC stated that it had identified three class members: Beverly Subia, Connie Sanchez, and Kristen Ertefai.  ALTRES contends that, although the letter mentions "retaliation" in passing, it does not describe the retaliated or whether the class members engaged in a protected activity.  Moreover, although the letter references "yet to be identified class members," ALTRES argues that the EEOC investigation was closed as of June 27, 2011, and the letter did not discuss how those class members would be identified.  [Id. at 5-6 (citing Pepper Decl., Exh. 6).]

By correspondence dated August 31, 2011, the EEOC required a monetary settlement offer to continue negotiations: "as the EEOC asserted, 'ALTRES must make some offer of monetary relief for the class of aggrieved individuals in this case in order to demonstrate that they are engaging in this process in good faith and to enable EEOC to continue to work toward a

resolution.'"  [Id. at 7 (quoting Pepper Decl., Exh. 8).]

        ALTRES settled with Colletto on August 29, 2011.  [Id.
(citing Pepper Decl. at ¶ 11).]  On November 21, 2011, the EEOC
notified ALTRES that it was ending the conciliation process.
[Id. (citing Pepper Decl., Exh. 10).]

        Similarly, according to La Rana, it also requested
copies of documents relating to the allegations of Title VII
violations on or around August 8, 2011.  [Mem. in Supp. of La
Rana Motion at 4 (citing La Rana Motion, Decl. of Barbara Petrus
("Petrus Decl."), Exh. E).]  The EEOC responded that it would not
provide the requested documents, but explained that it had
reached its "'determination after conducting a thorough
investigation, including a review of the charge of discrimination
filed against [La Rana], providing [La Rana] the opportunity to
respond to the charge, requesting and reviewing documents
provided from [Colletto] and [La Rana] to support their
positions, and interviewing [Colletto] and the relevant
witnesses.'"  [Id. at 5 (quoting Petrus Decl., Exh. F at 1)
(brackets La Rana's).]  The EEOC also stated that, "'in addition
to these identified class members [Beverly Subia, Connie Sanchez,
and Kristen Ertefai], there may be other yet to be identified
class members who would be entitled to relief.'"  [Id. (quoting
Petrus Decl., Exh. F at 1) (emphasis added by movant)).]

By letter dated August 26, 2011, La Rana responded to the conciliation demand by stating that it had "no understanding of the bases for this alleged 'class action[,]'" because it had never received any charges or other documents related to the three Claimants.  [Id. at 6 (quoting Petrus Decl., Exh. G at 1-2).]  La Rana claims that it was unaware that the EEOC was investigating claims related to Subia, Sanchez, or Ertefai, and thus it did not have an opportunity to respond to allegations of discrimination or retaliation regarding the three Claimants. [Id. at 6-7.]

The EEOC responded by letter on the same day, stating that La Rana "was given ample notice of the nature and scope of EEOC's investigation, was given every opportunity to fully participate in EEOC's investigation and, in fact, did participate in EEOC's investigation."  [Id. at 7 (quoting Petrus Decl., Exh. H at 1).]  The EEOC requested that La Rana offer a monetary settlement to demonstrate that it was engaging in the conciliation process in good faith.  [Id. (quoting Petrus Decl., Exh. H at 1).]

On September 14, 2011, La Rana stated that the EEOC had provided no indication that it was seeking "class" relief, as it did not indicate that it was investigating alleged misconduct toward any employee other than Colletto.  La Rana contends that it could not assess the reasonableness of the EEOC's conciliation

demand because it had no information regarding the alleged harassment and retaliation.  La Rana also asserted that the $500,000 demand for a class fund was unreasonable.  [Id. at 7-8 (citing Petrus Decl., Exh. I at 1-2).]

Counsel for La Rana and the EEOC held an in-person meeting, after which the EEOC asserted that La Rana had been aware of the scope of the claims.  The EEOC did not offer new information, but rather repeated the facts asserted in the Charge.  [Id. at 9-10 (citing Petrus Decl., Exh. J at 2).]  On or around October 14, 2011, La Rana responded by stating that the number of class members was insufficient to justify $200,000 in compensatory and punitive damages per claimant.  La Rana objected to the class fund as unreasonable because "the EEOC is demanding that [La Rana] make a 'nearly blind settlement offer' in order for the conciliation process to continue."  [Id. at 10 (quoting Petrus Decl., Exh. K at 3).]

On or around October 20, 2011, the EEOC asserted that La Rana had been "repeatedly and unequivocally" put on notice of the alleged violations.  It also reduced its demand for compensatory relief to $100,000 per Claimant and $350,000 for the class fund.  [Id. at 11-12 (quoting Petrus Decl., Exh. L at 2).]  In response, La Rana offered $11,250 for the three Claimants and an additional $11,250 for the class fund.  [Id. at 13 (citing Petrus Decl., Exh. M at 2).]  A week later, the EEOC ended the

conciliation process, stating that it had "determined that efforts to conciliate the above-mentioned charge . . . have been unsuccessful." [Id. at 13-14 (quoting Petrus Decl., Exh. N).]

## III. **ALTRES Motion**

### A.   **Motion**

The ALTRES Motion focuses primarily on two arguments: (1) that the Court lacks subject matter jurisdiction because the EEOC did not comply with the compulsory conciliation obligation; and (2) that the Complaint alleges insufficient facts under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

#### 1.   **Subject Matter Jurisdiction**

ALTRES argues that the Complaint should be dismissed because, on its face, it does not allege that the EEOC conciliated the claims in good faith.  Before the EEOC has standing to bring suit against an employer: (1) an administrative charge must be filed against the employer; (2) the EEOC must give the employer notice of the charge; (3) the EEOC must investigate the charge; (4) the EEOC must issue a reasonable cause determination; and (5) the EEOC must engage in a good faith effort at conciliation.  [Mem. in Supp. of ALTRES Motion at 11 (citing 42 U.S.C. § 2000e-5(b); EEOC v. Cal. Psychiatric Transitions, Inc., 644 F. Supp. 2d 1249, 1263-64 (E.D. Cal. 2009); EEOC v. Outback Steak House of Fla., Inc., 520 F. Supp. 2d 1250, 1262 (D. Colo. 2007)).]  ALTRES argues that these

12

prerequisites are jurisdictional limitations on the EEOC's ability to initiate a civil action. [Id. (citing EEOC v. Dillard's Inc., No. 08-CV-1780-IEG (PCL), 2011 WL 2784516, at *13 (S.D. Cal. July 14, 2011)).] It contends that the EEOC failed to allege facts showing that EEOC completed these pre-litigation requirements, or facts showing that its pre-litigation efforts "were sufficient to put [ALTRES] on notice that it potentially faced claims arising from a . . . class of current and former employees." [Id. at 11-12 (quoting Dillard's, Inc., 2011 WL 2784516, at *20).]

Next, ALTRES argues that the EEOC failed to conciliate all allegations in this action. It asserts that "[t]here is a split among the circuit courts of appeal as to how far a court may go in examining the substance of the conciliation negotiations between the parties." [Id. at 12-13 (citations omitted).] It argues that the Ninth Circuit has not decided this issue, but that district courts in this circuit follow the reasoning of EEOC v. Delight Wholesale Co., 973 F.2d 664, 669 (8th Cir. 1992), and focus on whether the EEOC "provided the employer with an opportunity to confront all the issues at the conciliation stage." [Id. at 13-14 (citing EEOC v. Lawry's Rests., Inc., CV 06-01963DDP (PLAX), 2006 WL 2085998, at *2 (C.D. Cal. July 17, 2006)).]

ALTRES argues that the split in circuits does not matter because, even under <u>Delight Wholesale</u>'s deferential approach, the EEOC's actions in this case were insufficient. [<u>Id.</u> at 14.]  It contends that the EEOC did not conciliate as to the unnamed class of "aggrieved individuals" it claims to represent; rather, it identified only two employees who were similarly situated to Colletto.  ALTRES cites to <u>EEOC v. CRST Van Expedited, Inc.</u>, 670 F.3d 897 (8th Cir. 2012),[1] for the proposition that the EEOC's failure to identify the total number of employees who were similarly situated to the charging party was a failure to conciliate on their behalf before filing suit. [<u>Id.</u> at 15.]  ALTRES contends that "the EEOC must discover such individuals and wrongdoing <u>during the course of its investigation</u>." [<u>Id.</u> at 16 (quoting <u>Dillard's Inc.</u>, 2011 WL 2784516) (emphasis ALTRES's).]  ALTRES argues that, because the EEOC failed to identify or conciliate on behalf of employees other than Subia and Sanchez, the EEOC should be precluded from trying to represent a larger "class" of employees.  [<u>Id.</u> at 17 (citing <u>EEOC v. Bruno's Rest.</u>, 13 F.3d 285, 288 (9th Cir. 1993)).]

---

[1] Subsequent to the filing of the ALTRES Motion, the February 22, 2012 decision was vacated and superseded on rehearing by <u>EEOC v. CRST Van Expedited, Inc.</u>, 679 F.3d 657 (8th Cir. May 8, 2012).

14

## 2.    Conclusory Allegations

ALTRES argues that the Complaint contains conclusory statements rather than facts.  It invokes Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires that a "'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  [Id. at 18 (quoting Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010)).]

## 3.    Failure to State a Title VII Claim

ALTRES contends that the Complaint fails to allege facts to support a cognizable theory under Title VII.  First, it argues that the EEOC does not provide facts showing that ALTRES and La Rana are joint employers.  It argues that the EEOC "lumps together 'Defendants' owner[s], high level executives, management and employees.'"  [Id. at 21.]  Rather, "the employer charged with discrimination under Title VII must have been the plaintiff's functional employer at the time of the alleged discrimination for plaintiff to prevail."  [Id. at 21 (citing City of Los Angeles v. Manhart, 435 U.S. 702, 718 n.33 (1978)).]  Joint-employer liability may be shown where "'both employers control the terms and conditions of employment of the employee.'"  [Id. (quoting EEOC v. Pac. Mar. Ass'n, 351 F.3d 1270, 1275 (9th Cir. 2003)).]  ALTRES asserts that the Ninth Circuit "consider[s] all factors relevant to the particular situation" in an "economic

15

reality test."  [Id. (quoting Pac. Mar. Ass'n, 351 F.3d at 1275).]  Considerations include: "whether the joint employer (1) supervised the employee, (2) had the power to hire and fire him, (3) had the power to discipline him, and (4) supervised, monitored, and/or controlled his work site."  [Id. at 21-22 (citing Pac. Mar. Ass'n, 351 F.3d at 1277).]

ALTRES argues that the Complaint does not specifically allege that it "harassed, discriminated against, or retaliated against the Claimants.  Instead, ALTRES is implicated solely by virtue of a few threadbare and conclusory allegations that it is a 'joint employer.'"  [Id. at 22.]  ALTRES contends that the Complaint ignores the pleading requirements of Rule 8, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), by only offering conclusory allegations against ALTRES.  It contends that "the EEOC must allege facts sufficient to state a claim against ALTRES as a joint employer under the Ninth Circuit's economic reality test."  [Id. at 23.]  It also argues that allegations in the Complaint contradict each other.  [Id. at 23-24.]

Second, ALTRES argues that the Complaint fails to sufficiently allege that the Claimants were subjected to disparate treatment or sexual harassment by ALTRES.  Regarding disparate treatment, ALTRES claims that the EEOC must prove a "causal connection" between an employee's protected status and

16

the adverse employment action.  [Id. at 25 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-02 (1973)).]  The employee must show that the employer had a discriminatory motive. [Id.]  Regarding hostile work environment, ALTRES argues that an employee must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" [Id. (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115-16 (2002)).]  ALTRES argues that, "[e]ven if the conduct is severe or pervasive, harassment is actionable only if it is directed at an employee 'because of' a protected status defined by Title VII."  [Id. at 26 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998); Ross v. Douglas Cnty., 234 F.3d 391, 396 (8th Cir. 2000)).]  Harassment and offensive behavior caused by personality conflicts, work-related conflicts, and general meanness are not actionable under employment discrimination laws.  [Id. (some citations omitted) (citing Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 566-67 (8th Cir. 2000)).]

ALTRES contends that the EEOC "does not allege that the adverse actions complained of occurred 'because of' the Claimant's protected status. . . .  [T]he EEOC alleges no facts to support its claim that the Claimants were treated differently

because of their sex." [Id. at 27-28.] ALTRES argues that the Complaint's failure to allege the identity of the alleged perpetrators or dates on which the harassment occurred warrants dismissal. [Id. at 28 (citing Taylor v. Donley, No. CIV S-08-0869 JAM DAD PS, 2012 WL 292841, at *14 (E.D. Cal. Jan. 31, 2012)).] The Complaint additionally fails to identify the frequency of the unwelcome conduct, other than to allege that the sexual conduct was "pervasive" because it "occurred on a daily basis." [Id. (quoting Complaint at ¶ 20(c)).] ALTRES contends that these claims do not show that the EEOC is entitled to relief. [Id. at 29.]

Third, regarding retaliation, ALTRES contends that the Complaint "fail[s] to allege any facts supporting the conclusory statement that the Claimants 'complained' of 'unlawful sexual harassment.'" [Id. at 29-30 (quoting Complaint at ¶ 21).] ALTRES alleges that, because the Complaint fails to put forth a cognizable theory of discrimination or harassment, "even if female employees complained about alleged comments or conduct in the workplace, the allegations are insufficient to conclude that they have been opposing 'any practice made an unlawful employment practice' under Title VII or participating in a proceeding under Title VII." [Id. at 30 (citing 24 U.S.C. § 2000e-3(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006)) (emphasis ALTRES's).]

18

Fourth, ALTRES argues that the Complaint offers no facts to support its allegation that ALTRES caused the Claimants to be constructively discharged.  ALTRES contends that, although the Complaint alleges that ALTRES "reduced the female employees' work hours, gave them less favorable working conditions, harassed them at work to the point of making the workplace too intolerable[,]" the Complaint does not satisfy the specificity requirement of Iqbal, Twombly, or Rule 8, because "it is wholly conclusory and fails to establish that any Claimant was compelled to resign."  [Id. (quoting Complaint at ¶ 21; EEOC v. Bimbo Bakeries USA, Inc., Civil No. 1:09-CV-1872, 2010 WL 598641 (M.D. Pa. Feb. 17, 2010)).]

B.    **Memorandum in Opposition**

1.    **Jurisdiction**

In opposition to the ALTRES Motion, the EEOC argues that "this Court has subject matter jurisdiction over the instant action as this action involves (1) a federal question under federal statutes, and (2) the plaintiff in this case is an agency of the United States.  The instant lawsuit is a government enforcement action brought by the EEOC pursuant to federal statute."  [Mem. in Opp. to ALTRES Motion at 14.]  Moreover, ALTRES claims that Congress specifically conferred jurisdiction of the EEOC's enforcement action on this Court by Sections 706(f)(1) and (3) of Title VII.  [Id. (citing 42 U.S.C. § 2000e-

5(f); Arbaugh v. Y & H Corp., 546 U.S. 500 (2006)).]

The EEOC next argues that the conciliation requirement is not a jurisdictional prerequisite.  It contends that, although ALTRES relies on EEOC v. Pierce Packing Co., 669 F.2d 604, 607 (9th Cir. 1982), subsequent Supreme Court authority casts doubt on the validity of Pierce Packing.  In Arbaugh v. Y & H Corp., 546 U.S. 500, 503 (2006), the Supreme Court articulated:

> an interpretive approach for determining
> whether a provision of Title VII is a
> jurisdictional prerequisite impacting the
> court's subject matter jurisdiction.
> Specifically, the Arbaugh court imposed the
> requirement that prior to a judicial finding
> that a requirement is a jurisdictional
> prerequisite, a court find clear
> congressional intent and statutory language
> regarding jurisdiction.

[Mem. in Opp. to ALTRES Motion at 16.]

The EEOC argues that the Supreme Court's decision in Arbaugh "compels a finding that the conciliation requirement is not a jurisdictional prerequisite as there is no clear congressional intent nor is there any plain language in the conciliation provision that would make the conciliation requirement jurisdictional." [Id.]  The EEOC contends that the language of the conciliation provision[2] does not evidence a

_____

[2] 42 U.S.C. § 2000e-5(b) provides: "If the Commission determines after such investigation that there is a reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and
(continued...)

congressional intent to make the requirement jurisdictional and is separate from the jurisdictional provisions in Title VII. [Id. at 17-18.]  The Ninth Circuit has not addressed this issue subsequent to Arbaugh, but the EEOC argues that other circuits have addressed the conciliation requirement or similar requirements and found that they are not jurisdictional requirements.  [Id. at 18 (citations omitted).]  The EEOC represents that the Fifth Circuit is the only circuit to analyze specifically whether the conciliation requirement is a jurisdictional prerequisite under Arbaugh in EEOC v. Agro Distribution, LLC, 555 F.3d 462, 469 (5th Cir. 2009).  [Id.]  In that case, the Fifth Circuit held that there was no clear congressional intent or language that would make the conciliation provision a jurisdictional limitation.  [Id. at 18-19 (some citations omitted) (citing Agro Distrib., 555 F.3d at 469).]  The EEOC also cites to a Sixth Circuit case, relying on Arbaugh, that held that another Title VII pre-suit requirement was not jurisdictional.  [Id. at 19 (citing Allen v. Highlands Hosp. Corp., 545 F.3d 387, 400-02 (6th Cir. 2008)).]

        The EEOC argues that, since the filing of the ALTRES Motion, the interpretive approach has been embraced by several districts within the Ninth Circuit, including the District of

---

        [2](...continued)
persuasion."

Hawai'i in EEOC v. Global Horizons, Inc., Cv. No. 11-00257 DAE-
RLP, 2012 WL 928160 (D. Hawai'i Mar. 16, 2012), the Eastern
District of California, the District of Nevada, and the Eastern
District of Washington.  [Id. at 20-21 (some citations omitted).]

### 2.  Good Faith Conciliation

The EEOC argues that, even if the Court finds that the
conciliation requirement is a jurisdictional requirement, it
conciliated in good faith.  It also notes in passing that, even
if it did not conciliate in good faith, the appropriate remedy is
not to dismiss this case, but to stay the case and allow the EEOC
an opportunity to fulfill its statutory obligations.  [Id. at 22
n.7 (citing EEOC v. Hometown Buffet, Inc., 481 F. Supp. 2d 1110,
1113 (S.D. Cal. 2007)).]

The EEOC notes ALTRES's acknowledgment that district
courts within this circuit apply the Eighth Circuit's deferential
approach in EEOC v. Delight Wholesale Co., 973 F.2d 664, 669 (8th
Cir. 1992).  Moreover, the EEOC notes that district courts in
this jurisdiction have adopted the standard of review articulated
by the Sixth Circuit.  [Id. at 23 (citing EEOC v. Keco
Industries, 748 F.2d 1097, 1102 (6th Cir. 1984) (finding that the
"EEOC must make a good faith effort to conciliate the claim.
However, once the employer rejects the conciliation attempts, the
EEOC is free to file suit under Title VII")).]

The EEOC argues that the evidence demonstrates that it

conciliated in good faith, because the Letter of Determination provided ALTRES with notice about the nature and scope of the claim against it and invited ALTRES to conciliate the claim. The EEOC contends that ALTRES should have been on notice as to the size of the purported class due to the size of the class fund. The EEOC claims that the investigator outlined the evidentiary basis for the EEOC's determination in its correspondence with ALTRES. [Id. at 24-25.] The EEOC also contends that it attempted to engage ALTRES in negotiations, but, when ALTRES received the EEOC's conciliation proposal, it inappropriately issued a FOIA request, then subsequently only offered $10,000 on the $200,000 demand for compensatory damages. ALTRES also conditioned the offer on overly onerous terms and refused to acknowledge the class fund. [Id. at 25-26.]

Furthermore, the EEOC argues that it is entitled to seek relief for class members besides just Colletto. The Ninth Circuit recognizes the EEOC's authority to seek relief on all aggrieved individuals affected by an unlawful practice, including those who did not file formal EEOC charges. [Id. at 26 (citing Bean v. Crocker Nat'l Bank, 600 F.2d 754, 759 (9th Cir. 1979); EEOC v. Dillard's, Inc., No. 08-CV-1780-IEG (PCL), 2011 WL 2784516 (S.D. Cal. July 14, 2011) (finding that the "EEOC can seek relief for individuals situated similarly to the charging party and is not required to identify every potential class

23

member")).]  For example, in EEOC v. Evans Fruit Co., No. CV-10-3033-LRS, 2012 WL 1899194 (E.D. Wash. May 24, 2012), the district court declined to adopt the Eighth Circuit's rule in EEOC v. CRST Van Expedited, Inc., 679 F.3d 657 (8th Cir. 2012), and instead held that it was "not persuaded the Ninth Circuit would adopt a rule that the EEOC must specifically identify, investigate and conciliate each alleged victim of discrimination before filing suit."  2012 WL 1899194, at *3.  The district court proceeded to find that the EEOC's pre-litigation efforts were sufficient to put the defendant on notice of the class, even though the exact number of class members remained unknown.  Id.  The EEOC argues that, similarly, ALTRES has always been on notice of the class.

### 3.  Sufficiency of Facts Pled

The EEOC argues that dismissal is not warranted under Rule 12(b)(6), because it sufficiently pled allegations against ALTRES.[3]  It requests that, if the Court does find any deficiency in the Complaint, it grant the EEOC leave to amend the Complaint.

The EEOC argues that it properly pled that ALTRES is liable for discrimination as a joint employer.  It argues that joint employer liability under Title VII is demonstrated where

---

[3] The EEOC argues that the Declaration of Don Huynh, attached to the ALTRES Motion, is inappropriate for consideration under Rule 12(b)(6), as it is outside the scope of information that can be considered on a motion to dismiss.  Moreover, that declaration is factually inaccurate, as the EEOC did interview Colletto during its investigation.  [Mem. in Opp. to ALTRES Motion at 30.]

"'both employers control the terms and conditions of employment of the employee.'" [Id. at 31 (quoting EEOC v. Pac. Mar. Ass'n, 351 F.3d 1270, 1275-77 (9th Cir. 2003)).] It contends that the Complaint clearly articulates the reason the EEOC filed suit against both employers: "At all relevant times, Defendant ALTRES has continually been under contract with Defendant Senor Frog's for services rendered, and has continuously been a joint employer with Defendant Senor Frog's where both generally controlled the terms and conditions of the employment of the Claimants." [Id. (quoting Complaint at ¶ 8).] Regarding claims against ALTRES, the Complaint alleges that ALTRES was responsible for sexual harassment policies and employment regulations, conducted an internal investigation in response to the charge of discrimination, and made recommendations to Senor Frog's. [Id. at 32 (citing Complaint at ¶ 8(c)).] The Complaint also alleges that the Charge had been filed against both Defendants, the EEOC investigated both Defendants, the Letter of Determination was issued to both Defendants, and both Defendants were invited to participate in conciliation. [Id. (citing Complaint at ¶¶ 12-18).]

        The EEOC argues that it properly pled that the class members were victims of discrimination on the basis of their sex. It rejects ALTRES's argument that the Complaint did not allege discrimination "because of" sex, because the Complaint utilized

25

that terminology and it is clear that this action was brought on behalf of a class of females to address sexual harassment and disparate treatment.  [Id. at 33.]  Regarding the frequency of the discrimination, the Complaint pled that "the offensive sexual conduct 'occurred on a daily basis.'"  [Id. at 34 (quoting Complaint at ¶ 20(c)).]  Regarding the identity of the harassers, the Complaint properly pled that they were members of "high level executives and/or management" and "Defendants' owner, high level executives, management and employees."  [Id. (quoting Complaint at ¶¶ 20).]

The EEOC also argues that it properly pled that ALTRES retaliated against the class members.  The Complaint states that "Charging Party and other female employees engaged in a protected activity when each opposed the unlawful sexual harassment by complaining about it to the Defendants Employers' management officials and requesting they take action to stop it."  [Complaint at ¶ 21(a).]  The Complaint describes how the female employees faced retaliation for their opposition to sexual harassment by identifying the adverse actions taken by management.  [Mem. in Opp. to ALTRES Motion at 36.]

The EEOC contends that the Complaint alleges sufficient facts regarding its claim of constructive discharge.  It argues that constructive discharge is not a separate claim, but is a part of the larger claim of discrimination.  [Id. (citing

Complaint at ¶ 20).]  For example, the Complaint alleges that the Claimants were "harassed . . . at work to the point of making the workplace too intolerable to work" and that the Claimants were subjected to "conditions too intolerable to continue working[.]" [Id. at 37 (quoting Complaint at ¶ 21(b), (c)).]  The EEOC clarifies that its claim of constructive discharge is also a part of a larger claim of discrimination that spans three pages, rather than a stand-alone claim.  [Id.]

Finally, regarding conciliation, the EEOC argues that it need only plead generally its conciliation efforts.  [Id. at 38 (citing Fed. R. Civ. P. 9(c); EEOC v. Global Horizons, Inc., Cv. No. 11-00257 DAE-RLP, 2012 WL 928160, at *5 (D. Hawai'i Mar. 16, 2012)).]  It alleges that it adequately pled the conciliation efforts, including Colletto's Charge, the EEOC investigation, the Letter of Determination, and its attempts to eliminate the unlawful employment practices at issue.  [Id. at 39.]

C. **Reply**

1. **Jurisdiction**

ALTRES argues that the EEOC's failure to conciliate is a proper basis for dismissal on jurisdictional grounds.  The Ninth Circuit stated: "Conciliation is 'a jurisdictional condition[] precedent to suit by the EEOC.'  EEOC v. Pierce Packing Co., 669 F.2d 605, 608 (9th Cir. 1982)."  [Reply to ALTRES Motion at 1 (quoting EEOC v. Bruno's Rest., 13 F.3d 285,

288 (9th Cir. 1982)).]  It argues that the Supreme Court's decision in Arbaugh v. Y & H Corp., 546 U.S. 500 (2006), does not affect this conclusion.  Arbaugh only addressed whether the employee-numerosity threshold was a jurisdictional prerequisite, but did not address the conciliation requirement.  [Id. at 2.]

ALTRES contends that, although United States District Judge David Alan Ezra opined in Global Horizons that Arbaugh casts doubt on the proposition that conciliation is a jurisdictional prerequisite, it is clear that "'[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'"  [Id. at 3 (quoting Camreta v. Greene, 131 S. Ct. 2020, 2033 (2011)).]  It also argues that Judge Ezra's departure from Pierce Packing is improper, as he is bound by the Ninth Circuit's decision until that case is overturned by the circuit court sitting en banc or the Supreme Court.  [Id. at 3-4.]  Moreover, it is not clear that the Ninth Circuit would disturb Pierce Packing in light of Arbaugh, as the Ninth Circuit has, in at least one instance, distinguished Arbaugh.  [Id. at 4 (citing Fleming v. Yuma Reg'l Med. Ctr., 587 F.3d 938, 945 (9th Cir. 2009)).]  ALTRES contends that, unless and until the Ninth Circuit revisits Pierce Packing, this Court is bound to faithfully apply Pierce Packing and conclude that: (1) conciliation is a jurisdictional requirement;

28

and (2) the failure to conciliate is a basis for dismissal.  [Id. at 5.]

    2.  **Conciliation Process**

        Regarding the conciliation process, ALTRES argues that the EEOC undermined the process by refusing to provide information necessary to assess the class claims.  ALTRES contends that, as evidenced by the correspondence between the EEOC and ALTRES, ALTRES was willing to negotiate and requested information on the size of the class and identity of the Claimants, but the EEOC refused to cooperate.  [Id. at 5-6 (citing ALTRES Motion, Pepper Decl., Exhs. 4, 5).]  ALTRES argues that the EEOC did not dispute that it failed to identify the purported class of Claimants, which, ALTRES contends, is a failure to conciliate.  [Id. at 6.]

        ALTRES argues that Title VII includes procedures to give an employer adequate notice of the nature of the charges against it and an opportunity to resolve the charges through conciliation.  [Id. at 7 (some citations omitted) (quoting EEOC v. Outback Steak House of Fla., Inc., 520 F. Supp. 2d 1250, 1262 (D. Colo. 2007)).]  It argues that violations uncovered during the EEOC's investigation are actionable, but the EEOC "may not use discovery in the resulting lawsuit as a fishing expedition to uncover more violations."  [Id. (quoting EEOC v. CRST Van Expedited, Inc., 679 F.3d 657, 675 (8th Cir. 2012) ("CRST")).]

Particularly, in actions requesting backpay, the EEOC must identify specific class members and offer an explanation of damages sought.  [Id. at 8 (citations omitted).]  In CRST, the Eighth Circuit held that the EEOC's failure to discover sixty-seven women during its administrative investigation and to disclose those individuals during the conciliation process warranted the dismissal of their claims, as "'the EEOC wholly failed to satisfy its statutory pre-suit obligations.'"  [Id. (quoting 679 F.3d at 675-76).]  Similarly, the district court in EEOC v. First Midwest Bank, N.A., 14 F. Supp. 2d 1028 (N.D. Ill. 1998), found that the EEOC's presentment of a settlement figure without providing information related to the class of female employees or the calculation of damages forced the employer "to make a conciliation proposal in an evidentiary vacuum" and was a failure to engage in a "'sincere and reasonable effort'" to conciliate.  [Id. at 10 (quoting 14 F. Supp. 2d at 1032-33).]

     In EEOC v. Dillard's Inc., No. 08-CV-1780-IEG (PCL), 2011 WL 2784516 (S.D. Cal. July 14, 2011), relied upon by the EEOC, although the district court concluded that the EEOC was not required to identify every potential class member, the court further instructed that "'the EEOC must discover such individuals and wrongdoing during the course of its investigation.'"  [Id. at 12 (quoting 2011 WL 2784516, at *6) (emphasis omitted).]  The court held that, although the claims could proceed, the EEOC

30

could not "use discovery in the resulting lawsuit 'as a fishing expedition' to uncover more violations" that had not been previously identified or conciliated. [Id. (quoting 2011 WL 2784516, at *7).]

ALTRES argues that, when taken as a whole, the various cases show that the EEOC's claims must be limited to the "alleged violations and allegedly aggrieved individuals it discovered during its pre-lawsuit investigation. . . .  Indeed, when the EEOC demands a large settlement based on nothing more than vague, conclusory allegations, the employer is trapped in an 'evidentiary vacuum' and can neither investigate the claims, nor reasonably assess the EEOC's settlement offer." [Id.]  It asserts that the EEOC's failure to explain the size of the class and identify the individuals in that class is a failure to conciliate. [Id. at 13 (citing EEOC v. Evans Fruit Co., No. CV-10-3033-LRS, 2012 WL 1899194 (E.D. Wash. May 24, 2012) (a "good faith" attempt at conciliation requires "some justification for the amount of damages sought, potential size of the class, general temporal scope of the allegations, and the potential number of individuals")).]

### 3.   **Failure to State a Claim**

Finally, ALTRES argues that the EEOC did not meaningfully respond to its arguments regarding the sufficiency of the Complaint under the Twombly and Iqbal standard, but rather

forwarded arguments under the "no set of facts" standard in
Conley v. Gibson, 355 U.S. 41 (1957). [Id. at 14.] ALTRES
further argues that the EEOC failed to address the joint-employer
argument in light of Doe I. v. Wal-Mart Stores, Inc., 572 F.3d
677, 682-83 (9th Cir. 2009), King v. Corcoran State Prison, No.
1:10-cv-00878-LJO-SKO, 2011 WL 2295035 (E.D. Cal. June 8, 2011),
and Thomas v. Farley, 31 F.3d 557, 558-59 (7th Cir. 1994).
Rather, the EEOC simply repeats the allegations in the Complaint.
Moreover, ALTRES argues that the EEOC fails to respond to
ALTRES's arguments that the EEOC cannot base its claim of sexual
harassment on an aggregate of all conduct across an unspecific
group of claimants by unspecified perpetrators. [Id. at 14-15.]

## IV. La Rana Motion

### A. Motion

#### 1. Conciliation

La Rana first argues that the Court lacks subject
matter jurisdiction, because the EEOC failed to fulfill the
statutory prerequisites when it did not provide sufficient notice
as to the "class" or engage in the conciliation process in good
faith. La Rana cites to Pierce Packing for the proposition that
the pre-litigation requirements are jurisdictional limitations
that can prevent the EEOC from pursuing this action. [Mem. in
Supp. of La Rana Motion at 17-18.]

La Rana contends that the EEOC did not conciliate in

good faith.   Although there are different tests for "good faith" conciliation, La Rana argues that the Court should examine the EEOC's conduct "to see if it attempted to conciliate in a manner which demonstrated a willingness to work toward settlement and a fundamental element of working toward settlement is providing a reasonable amount of information to make settlement a possibility." [Id. at 19-20 (citing EEOC v. High Speed Enter., Inc., No. CV-08-01789-PHX-ROS, 2010 WL 8367452, at *5 (D. Ariz. Sept. 30, 2010)).]

        La Rana relies on EEOC v. Bloomberg, L.P., 751 F. Supp. 2d 628 (S.D.N.Y. 2010), in which the court found that, after a five-month conciliation process, "the EEOC failed to meet the requirement that it respond in a reasonable and flexible manner to the employer in conciliation," because, after demanding a large sum of money, the EEOC had "stonewalled" the employer's "plainly reasonable" requests to obtain further information.   Id. at 641.  That court stated:

>        The Court concludes that the EEOC's position,
> in these circumstances, does not embody a
> "reasonable and flexible" response to the
> "reasonable attitudes" of the employer.
>
>        The EEOC focused on Bloomberg's failure
> to provide any "monetary offer to settle" the
> claims to the exclusion of other
> considerations.   In this context, this
> inflexibility represented a
> "take-it-or-leave-it demand."   The EEOC did
> not respond to Bloomberg's initial letter
> asking for more information, and its ultimate
> response to such requests was to refuse to

33

> provide any further information.  In a
> complex case like this one, the EEOC cannot,
> when the employer reasonably asks for
> information to formulate a monetary
> counteroffer, make substantial monetary
> demands and require employers simply to pony
> up or face a lawsuit.  The EEOC's approach
> suggests, in the back-and-forth that
> transpired here, that the EEOC was not making
> a sincere effort to conciliate the claims.

Id. at 642 (internal citations omitted); see High Speed Enter.,

2010 WL 8367452, at *5 ("[t]he EEOC's refusal to offer any

meaningful explanation of how it calculated [Claimant's] damages,

despite repeated requests from Defendant, prevented Defendant

from being able to fully participate in the conciliation

process").

     La Rana argues that, as in Bloomberg, the EEOC's

conciliation efforts in the present case "consisted of demanding

a large class fund for an unknown and potentially non-existent

number of 'class' claimants - which the EEOC would then give to a

charity of its choosing if it could not find additional Claimants

- yet the EEOC refused to provide any meaningful information on

the size and scope of the class." [Mem. in Supp. of La Rana

Motion at 22 (citing Petrus Decl., Exh. D).]  La Rana argues that

the EEOC did not conciliate in good faith because it continually

rejected La Rana's reasonable requests for information regarding

the purported claimants.  La Rana contends that, conversely, it

continually exhibited the intent to conciliate with the EEOC, as

evidenced by its "significant" settlement offer.  [Mem. in Supp.

of La Rana Motion at 22-23.]   In the face of that offer and an expressed desire to continue the conciliation process, the EEOC terminated conciliation because such efforts were "futile."   La Rana contends that "the EEOC's conciliation efforts consisted of rebuffing La Rana's reasonable requests for information, . . . and continually proffering 'take-it-or-leave-it' conciliation offers[.]"   [Id. at 24 (internal citations omitted).]

La Rana next argues that, even if the EEOC conciliated in good faith, it may only seek relief for the identified class members discovered in the course of the investigation of the Charge.   [Id. at 24-25 (citing Dillard's, 2011 WL 2784516, at *6 ("[e]ach step along the administrative path - from charge to investigation and from investigation to lawsuit - must grow out of the one before it."); CRST, 670 F.3d at 916 ("Absent an investigation and reasonable cause determination apprising the employer of the charges lodged against it, the employer has no meaningful opportunity to conciliate.")).]   The EEOC's Letter of Determination indicated that it had not discovered specific claimants during its investigation, and the EEOC admitted that it had not discovered any additional class members.   Thus, the EEOC did not discover specific claimants during the investigation, and it only discovered three claimants prior to ending conciliation. La Rana requests that the Court dismiss the Complaint for failing to discover the class members during its investigation, or limit

35

relief to the three class members it discovered prior to filing the Complaint.  [<u>Id.</u> at 27.]

### 2.   <u>Failure to Plead Constructive Discharge</u>

La Rana argues that the discrimination and retaliation claims should be dismissed for failure to properly plead constructive discharge as an element of the claims.  [<u>Id.</u> (citing <u>Dawson v. Entek Int'l</u>, 630 F.3d 928, 936 (9th Cir. 2011) (to establish a prima facie retaliation claim, "the employee must show that he engaged in a protected activity, he was subsequently subjected to an adverse employment action, and that a causal link exists between the two"); <u>Tanaka v. Dep't of Accounting & Gen. Servs.</u>, Civil. No. 09-00579 SOM/KSC, 2011 WL 1598718, at *5 (D. Hawai'i Apr. 27, 2011)).]

La Rana argues that the EEOC's allegations of constructive discharge are conclusory allegations prohibited by Rule 8 and fail to provide any factual allegation that the Claimants had no reasonable alternative except to quit.  [<u>Id.</u> at 29 (citing <u>Helgeson v. Am. Int'l Group, Inc.</u>, 44 F. Supp. 2d 1091, 1100 (S.D. Cal. 1999)).]  It contends that the factual allegations relating to constructive discharge pertain only to Colletto, who is not a Claimant in the present action.  [<u>Id.</u> at 30 n.5.]  Thus, because "the EEOC proffers no specific facts supporting that the Claimants were constructively discharged, these conclusory statements of law are insufficient to establish

a plausible constructive discharge claim." [Id. at 29-30.]

**B.   Memorandum in Opposition**

In opposition to the La Rana Motion, the EEOC recites virtually verbatim its opposition to the ALTRES Motion, with only two substantive differences.

First, the EEOC addresses La Rana's reliance on Bloomberg, arguing that that case was analyzed under the summary judgment standard, rather than a Rule 12 motion to dismiss standard.  The Bloomberg court also held that, although the EEOC had not conciliated appropriately regarding the retaliation claim, it had properly conciliated the discrimination claim. Regarding the requisite notice to the employer, the court held that "[t]his argument misapprehends the role notice plays in the conciliation process.  Notice of the particulars of the investigation is not required, and the scope of the EEOC's initial investigation does not limit the scope of the lawsuit alleging Title VII violations it may later bring."  751 F. Supp. 2d at 633.  Despite the defendant's insistence on more information, the EEOC's conciliation efforts were adequate, because they put the defendant on notice of the class.  [Mem. in Opp. to La Rana Motion at 27-28.]  The EEOC argues that it conciliated in good faith in the present case, because the Letter of Determination provided La Rana with notice of the nature and

scope of the claim against La Rana and invited La Rana to conciliate the claim.  The EEOC also alleges that, in correspondence with La Rana, it outlined the evidentiary basis for its determination and provided information regarding its computation for monetary relief for the class members.  [Id. at 28-29.]

Second, also regarding its good faith efforts at conciliation, the EEOC argues that it responded to La Rana's concerns and requests for evidence and agreed to an in-person meeting, despite La Rana's failure to provide a counteroffer. The EEOC claims that it was flexible in reducing its demand to $100,000 per named Claimant and $350,000 for the class fund. Thereafter, La Rana made its only "meaningful" counteroffer for only $11,250 between the three identified claimants and $11,250 for the remaining class members.  La Rana never addressed the EEOC's request for injunctive relief.  As such, the EEOC claims that it "could not reasonably believe further conciliation efforts with Defendant would be fruitful and failed conciliation."  [Id. at 30-31.]

C.   **Reply**

La Rana first raises two preliminary matters.  First, it takes issue with the Declaration of Amrita Mallik attached to the memorandum in opposition.  It argues that the declaration contains statements that lack foundation, as they relate to

events of which the declarant has no personal knowledge, such as the EEOC investigation and the in-person conciliation conference. [Reply to La Rana Motion at 1 n.1.]  Second, it argues that the EEOC's certificate of compliance for the memorandum in opposition excludes pages i through vi, as the inclusion of those pages would increase the word count to over 9,000 words as provided by Local Rule LR7.5(b).  [Id. at 1 n.2.]

## 1.  Jurisdiction

La Rana argues that the plain language of 42 U.S.C. § 2000e-5 establishes that conciliation is a jurisdictional prerequisite.  [Id. at 3.]  It argues that Pierce Packing established that "[g]enuine investigation, reasonable cause determination and conciliation are jurisdictional conditions precedent to suit by the EEOC[,]" 669 F.2d at 608, and no subsequent Supreme Court or Ninth Circuit case has explicitly or impliedly overturned this decision.  [Reply to La Rana Motion at 4.]  Regarding Arbaugh v. Y & H Corp., 546 U.S. 500 (2006), La Rana argues that the EEOC's reliance is misplaced:

> the Supreme Court found that Title VII's "15-employee threshold" for application of the statute was not a jurisdictional requirement because it "appears in a separate provision that does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." [Arbaugh,] 546 U.S. 500, 55 (2006).  Notably, the Arbaugh decision did not address the EEOC's pre-litigation obligations, and it "made no broad statement about all of Title VII's pre-litigation requirements." [EEOC v.

39

Dillard's, Inc., Case No. 08-CV-1780-IEG
(PCL), 2011 WL 2784516, at *4 n.2 (S.D. Cal.
2011).]

[Reply to La Rana Motion at 5.]

La Rana argues that, to determine whether a pre-
litigation requirement is jurisdictional, Reed Elsevier, Inc. v.
Muchnick, 130 S. Ct. 1237 (2010), requires an examination of four
factors.  In addition to the inquiry into the statutory language
discussed in Arbaugh, the Court must also consider "the location
of the pre-litigation requirement in relation to the statute's
jurisdictional provision," "the overall framework of the
statute," and "whether the prerequisite is a type of limitation
that the Supreme Court or Congress has historically treated as
jurisdictional in nature[.]"  [Reply to La Rana Motion at 5-6
(citing Reed Elsevier, Inc., 130 S. Ct. at 1245-48).]  It argues
that the present case satisfies all four factors: as to the first
two, the statute states that the conciliation requirement is
jurisdictional; [id. at 6-7 (citing § 2000e-5(f)(1) ("If . . .
the Commission has been unable to secure . . . a conciliation
agreement . . . the Commission may bring a civil action against
any respondent"); § 2000e-5(f)(3) ("Each United States district
court . . . shall have jurisdiction of actions brought under this
subchapter."));] the context of Title VII shows that Congress
intended to require the EEOC to conciliate in good faith before
filing suit; [id. at 7;] and courts in the Ninth Circuit have

40

treated conciliation as a jurisdictional requirement [id. 8
(citing Pierce Packing, 669 F.2d at 609; Dillard's, 2011 WL
2784516)].

### 2.   Conciliation in Good Faith

La Rana argues that the EEOC failed to conciliate in
good faith and it cannot meet its obligations by merely
attempting to conciliate.  La Rana contends that, even under the
"deferential" standard urged by the EEOC, its "take it or leave
it" offer was not in good faith and did not encourage settlement.
La Rana urges the Court to look at the substance of the EEOC's
conciliation efforts.  La Rana argues that the conciliation
process in question only involved the EEOC's refusal to provide
information and its termination of the conciliation efforts in
the face of La Rana's settlement offer.  [Id. at 10-13.]

### 3.   Limitation to Disclosed Claimants

La Rana argues that the EEOC's claims should be limited
to Claimants who were disclosed during conciliation and urges the
Court to adopt the Eighth Circuit's rule in CRST.  [Id. at 16.]

### 4.   Constructive Discharge

La Rana argues that the claims regarding constructive
discharge "are the type of generalized, conclusory allegations
that are insufficient to satisfy FRCP Rule 8."  [Id. at 17.]  La
Rana argues that such claims are insufficient, and the EEOC must
establish that the employee actually quit.  [Id. at 18.]

41

## STANDARDS

### A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a claim for "failure to state a claim upon which relief can be granted[.]"

Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 554, 127 S. Ct. 1955).

<u>Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc.</u>, 693 F. Supp. 2d 1192, 1195-96 (D. Hawai`i 2010).

**B.   <u>Rule 12(b)(1)</u>**

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or attack the existence of subject matter jurisdiction in fact.  <u>Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979). When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996).  When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact.  <u>Thornhill</u>, 594 F.2d at 733.

## DISCUSSION

I.   **Conciliation**

    A.   **Jurisdictional Requirement**

        The Court first addresses Defendants' challenge to the Court's subject matter jurisdiction over the present action. Regarding the pre-suit conciliation provision, Title VII states: "If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). Regarding the EEOC's ability to file suit thereafter, the relevant section of Title VII states:

> (1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. . . .
>
> . . . .
>
> (3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed . . . .

42 U.S.C. § 2000e-5(f).

In <u>EEOC v. Pierce Packing Co.</u>, 669 F.2d 605 (9th Cir. 1982), the Ninth Circuit explicitly construed § 2000e-5 as requiring conciliation as a jurisdictional prerequisite:

> Title VII of the Civil Rights Act of 1964 conferred upon the EEOC only the powers of investigation and conciliation.  A 1972 amendment empowered the agency to commence civil suits in its own name.  42 U.S.C. § 2000e-5(f)(1).  <u>There are several conditions precedent however, which the agency must satisfy before it may bring suit. See, e.g.</u>, <u>EEOC v. Container Corp. of America</u>, 352 F. Supp. 262, 265 (M.D. Fla. 1972); <u>EEOC v. Allegheny Airlines</u>, 436 F. Supp. 1300, 1304 (W.D. Pa. 1977); <u>EEOC v. E. I. DuPont de Nemours and Co.</u>, 373 F. Supp. 1321, 1333 (D. Del. 1974), <u>aff'd</u>, 516 F.2d 1297 (3rd Cir. 1975).  The enabling act states that: "The commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice . . ."  42 U.S.C. § 2000e-5(a). (Emphasis added.)  The initial step in a Title VII action occurs when a charge of unlawful employment practice is filed with the EEOC.  § 2000e-5(b).  The EEOC next must notify the alleged wrongdoer of the charge, conduct an investigation, and determine whether reasonable cause exists to believe that the charge is true.  <u>Id.</u>  If reasonable cause is not found, the charge shall be dismissed.  <u>Id.</u>  If reasonable cause is found, ". . . the commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." <u>Id.</u>  If the commission determines that further conciliation efforts would be futile or nonproductive, it shall so notify the respondent in writing.  29 CFR 1601.25 (1980).  This notice is to apprise the respondent of a "last chance" to conciliate.

> <u>See, e.g.</u>, <u>EEOC v. Hickey-Mitchell Co.</u>, 507
> F.2d 944, 948 (8th Cir. 1974).  <u>Only after
> the preceding steps have been exhausted, and
> the commission is unable to reach an
> acceptable conciliation, may the commission
> bring a civil action.</u>  42 U.S.C.
> § 2000e-5(f)(1).

669 F.2d at 607 (emphases added).  The Ninth Circuit concluded

that "[g]enuine investigation, reasonable cause determination and

conciliation are jurisdictional conditions precedent to suit by

the EEOC . . . ." <u>Id.</u> at 608.

Subsequently, the Ninth Circuit and district courts

within the circuit followed <u>Pierce Packing</u>'s characterization of

conciliation as a jurisdictional prerequisite:

> the Ninth Circuit consistently characterizes
> the EEOC's pre-litigation requirements under
> 42 U.S.C. § 2000e-5(b) as jurisdictional
> limitations to EEOC's initiating civil
> actions in federal court.  <u>Pierce Packing</u>,
> 669 F.2d at 607 ("Genuine investigation,
> reasonable cause determination and
> conciliation are jurisdictional conditions
> precedent to suit by the EEOC . . . ."); <u>EEOC
> v. Bruno's Rest.</u>, 13 F.3d 285, 288 (9th Cir.
> 1993) ("Conciliation is a jurisdictional
> condition precedent to suit by the EEOC.");
> <u>see also</u> <u>Munoz v. Mabus</u>, 630 F.3d 856, 861
> n.3 (9th Cir. 2010) (noting that the EEOC
> cannot "'leapfrog[ ]' Title VII
> administrative procedures, which serve as
> jurisdictional prerequisites, by bringing an
> action to enforce a predetermination
> settlement agreement." (quoting <u>Pierce
> Packing</u>, 669 F.2d at 609)).  Furthermore,
> district courts in this Circuit treat Title
> VII's pre-litigation requirements as
> jurisdictional limitations.  <u>E.g.</u>, <u>EEOC v.
> Timeless Invs., Inc.</u>, 734 F. Supp. 2d 1035,
> 1051-52 (E.D. Cal. 2010); <u>EEOC v. Cal.
> Psychiatric Transitions, Inc.</u>, 725 F. Supp.

2d 1100, 1114–15 (E.D. Cal. 2010)
[hereinafter "Cal. Psychiatric II"]; U.S.
EEOC v. NCL Am., Inc., 536 F. Supp. 2d 1216,
1220 (D. Haw. 2008); EEOC v. Hometown Buffet,
Inc., 481 F. Supp. 2d 1110, 1113 (S.D. Cal.
2007).  This Court finds no reason to ignore
the Ninth Circuit's statements or the clear
trend among sister courts in this Circuit.
It will therefore consider Dillard's
challenge to the sufficiency of the EEOC's
pre-litigation efforts under Rule 12(b)(1).

EEOC v. Dillard's, Inc., No. 08-CV-1780-IEG (PCL), 2011 WL

2784516, at *4 (S.D. Cal. July 14, 2011) (internal footnotes

omitted).

The EEOC urges the Court to depart from Pierce Packing

and its progeny, arguing that recent cases have called into

question the validity of the Ninth Circuit's ruling.  In Arbaugh

v. Y & H Corp., 546 U.S. 500 (2006), the United States Supreme

Court considered whether the employee-numerosity requirement in

Title VII was a prerequisite to a civil lawsuit.  The Supreme

Court stated:

> The dispute now before us concerns the
> proper classification of Title VII's
> statutory limitation of covered employers to
> those with 15 or more employees.  If the
> limitation conditions subject-matter
> jurisdiction, as the lower courts held it
> did, then a conclusion that Y & H had fewer
> than 15 employees would require erasure of
> the judgment for Arbaugh entered on the jury
> verdict.  But if the lower courts'
> subject-matter jurisdiction characterization
> is incorrect, and the issue, instead,
> concerns the merits of Arbaugh's case, then Y
> & H raised the employee-numerosity
> requirement too late.

546 U.S. at 510-11.

The Court conducted a four-part inquiry and held:

Arbaugh invoked federal-question jurisdiction under § 1331, but her case "aris[es]" under a federal law, Title VII, that specifies, as a prerequisite to its application, the existence of a particular fact, *i.e.*, 15 or more employees.  We resolve the question whether that fact is "jurisdictional" or relates to the "merits" of a Title VII claim mindful of the consequences of typing the 15-employee threshold a determinant of subject-matter jurisdiction, rather than an element of Arbaugh's claim for relief.

First, "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." United States v. Cotton, 535 U.S. 625, 630, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002). Moreover, courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999).  Nothing in the text of Title VII indicates that Congress intended courts, on their own motion, to assure that the employee-numerosity requirement is met.

Second, in some instances, if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own.  See 5B C. Wright & A. Miller, Federal Practice and Procedure § 1350, pp. 243-249 (3d ed. 2004); 2 Moore § 12.30[3], pp. 12-37 to 12-38.  If satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper trier of contested facts. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-151, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

49

Third, when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.  See 16 Moore § 106.66[1], pp. 106-88 to 106-89.  Thus in the instant case, the trial court dismissed, along with the Title VII claim, pendent state-law claims, see supra, at 1239-1240, fully tried by a jury and determined on the merits, see App. to Pet. for Cert. 23, 47.  In contrast, when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims.  See 16 Moore § 106.66 [1], pp. 106-86 to 106-89.

Of course, Congress could make the employee-numerosity requirement "jurisdictional," just as it has made an amount-in-controversy threshold an ingredient of subject-matter jurisdiction in delineating diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332.  But neither § 1331, nor Title VII's jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3) (authorizing jurisdiction over actions "brought under" Title VII), specifies any threshold ingredient akin to 28 U.S.C. § 1332's monetary floor.  Instead, the 15-employee threshold appears in a separate provision that "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts."  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982).  Given the "unfair[ness]" and "waste of judicial resources," App. to Pet. for Cert. 47, entailed in tying the employee-numerosity requirement to subject-matter jurisdiction, we think it the sounder course to refrain from constricting § 1331 or Title VII's jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3), and to leave the ball in Congress' court.  If the Legislature clearly states that a threshold limitation on a statute's scope shall count as

> jurisdictional, then courts and litigants
> will be duly instructed and will not be left
> to wrestle with the issue.  See Da Silva[ v.
> Kinsho Int'l Corp., 229 F.3d 358, 361 (2d
> Cir. 2000)] ("Whether a disputed matter
> concerns jurisdiction or the merits (or
> occasionally both) is sometimes a close
> question.").  But when Congress does not rank
> a statutory limitation on coverage as
> jurisdictional, courts should treat the
> restriction as nonjurisdictional in
> character.  Applying that readily
> administrable bright line to this case, we
> hold that the threshold number of employees
> for application of Title VII is an element of
> a plaintiff's claim for relief, not a
> jurisdictional issue.

Id. at 513-16 (internal footnote omitted); see also Reed

Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1243-48 (2010).

Relying on Arbaugh, this district court held that the

conciliation provision is not a jurisdictional requirement:

> The Ninth Circuit has held that
> "[c]onciliation is a 'jurisdictional
> condition [ ] precedent to suit by the
> EEOC.'"  E.E.O.C. v. Bruno's Restaurant, 13
> F.3d 285, 288 (9th Cir. 1993); see also
> E.E.O.C. v. Pierce Packing Co., 669 F.2d 605,
> 608 (9th Cir. 1982).  This holding is
> premised on Congress' preference for
> achieving Title VII's objectives through
> voluntary means rather than through
> litigation.  Pierce Packing, 669 F.2d at 608.
> However, recent developments in the law have
> undermined the Ninth Circuit's rationale for
> characterizing conciliation as
> jurisdictional.  The Supreme Court "has
> implicitly rejected the notion that Congress'
> preference for conciliation, while important,
> is a sufficient basis in of itself for
> concluding that Congress intended the
> requirement to be jurisdictional."  E.E.O.C.
> v. Alia Corp., --- F. Supp. 2d ----, ----,
> 2012 WL 393510, at *6 (E.D. Cal. February 6,

51

2012); see Reed Elsevier, Inc. v. Muchnick, --- U.S. ----, 130 S. Ct. 1237, 1248 n.9, 176 L. Ed. 2d 18 (2010) ("We do not agree that a condition should be ranked as jurisdictional merely because it promotes important congressional objectives."); see also Arbaugh v. Y & H Corp., 546 U.S. 500, 504, 515–516, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) (holding that Title VII's numerosity requirement is non-jurisdictional even though it serves the important policy goal of "spar[ing] very small businesses from Title VII liability" because the statutory provision containing the requirement "does not speak in jurisdictional terms or in any way refer to the jurisdiction of district courts").  The Supreme Court has made clear that a statutory requirement is jurisdictional only where there is "clear indication that Congress wanted the rule to be jurisdictional." Henderson v. Shinseki, --- U.S. ----, 131 S. Ct. 1197, 1203, 179 L. Ed. 2d 159 (2011) (internal quotation marks and citation omitted).  Here, the statutory provisions pertaining to Title VII's conciliation requirement, 42 U.S.C. §§ 2000e-5(b) and 2000e-5(f)(1), do not clearly indicate that conciliation is a jurisdictional prerequisite.

EEOC v. Global Horizons, Inc., Cv. No. 11-00257 DAE-RLP, 2012 WL 928160, at *4 (D. Hawai'i Mar. 16, 2012).

Conversely, the district court in Dillard's rejected the argument that Arbaugh casts doubt on conciliation as a jurisdictional prerequisite:

The EEOC, argues the Supreme Court's decision in Arbaugh establishes that, as a matter of law, none of Title VII's administrative prerequisites to filing suit are jurisdictional in nature.  But Arbaugh held only that Title VII's statutory definition of "employer" is not a "jurisdictional" prerequisite for the EEOC to

52

file suit, but a substantive element of a
Title VII claim.  546 U.S. at 514–16.
<u>Arbaugh</u> made no broad statement about all of
Title VII's pre-litigation requirements.

Nor do the two post-<u>Arbaugh</u> decisions in
the Ninth Circuit cited by the EEOC.  In
<u>Fleming v. Yuma Regional Medical Center</u>, the
Ninth Circuit held only that <u>Arbaugh</u>'s
finding that the fifteen-employee minimum
formed part of the "substantive" claim rather
than a jurisdictional prerequisite did not
mean that the provision was a "substantive"
rather than a "procedural" requirement for a
Title VII claim.  587 F.3d 938, 946 (9th Cir.
2009).  In <u>Swift v. Realty Executives
Nevada's Choice</u>, the Ninth Circuit held that,
for the same reasons that <u>Arbaugh</u> held Title
VII's definition of "employer" is not a
jurisdictional prerequisite, neither is the
statute's definition of "employee."  211 Fed.
Appx. 571, 573 (9th Cir. Nov. 29, 2006).

<u>Dillard's</u>, 2011 WL 2784516, at *4 n.2.  The district court,

however, acknowledged that there is a split among circuits

regarding this issue:

Since <u>Arbaugh</u>, however, there has been
some disagreement among federal courts in
other circuits as to whether Title VII's
preconditions to the EEOC's filing a civil
suit are jurisdictional or merely elements of
a Title VII claim.  <u>Compare, e.g.</u>, <u>Outback</u>,
520 F. Supp. 2d at 1262 ("Where the EEOC
fails to exhaust administrative remedies
prior to bringing a public enforcement suit
pursuant to Title VII, a court lacks subject
matter jurisdiction over the action." (citing
<u>EEOC v. Am. Nat'l Bank</u>, 652 F.2d 1178, 1185
(4th Cir. 1981))); <u>U.S. EEOC v. Lockheed
Martin Global Telecomms., Inc.</u>, 514 F. Supp.
797, 806 (D. Md. 2007) (the EEOC's
conciliation requirement—in which "the EEOC
must outline the basis for its determination
of discrimination"—is a "jurisdictional
requirement to filing suit"); <u>EEOC v. CSRT</u>

> Van Expedited, Inc., No. 07-cv-95, 2009 WL
> 2524402, at *19 (N.D. Iowa Aug. 13, 2009);
> with EEOC v. Agro Distrib., LLC, 555 F.3d
> 462, 469 (5th Cir. 2009) (interpreting
> Arbaugh and concluding "that the EEOC's
> conciliation requirement is a condition to
> suit but not a jurisdictional
> prerequisite."); EEOC v. Hibbling Taconite
> Co., 266 F.R.D. 260, 268 n.3 (D. Minn. Dec.
> 7, 2009) (relying on Agro Distrib.); EEOC v.
> Serv. Temps, Inc., No. 3:08-CV-1 552, 2010 WL
> 2381499, at *1-3 & n.3 (N.D. Tex. June 11,
> 2010) (same).

Id. at *4 n.3.

In the absence of any controlling precedent explicitly overturning the Ninth Circuit's pronouncement in Pierce Packing, this Court remains bound by the Ninth Circuit's holding that "[g]enuine investigation, reasonable cause determination and conciliation are jurisdictional conditions precedent to suit by the EEOC . . . ." 669 F.2d at 608. Although the Court recognizes the split in authorities - indeed, within this very circuit - over the effect of Arbaugh and its progeny, the Ninth Circuit has consistently construed conciliation as a jurisdictional prerequisite. See Dillard's, 2011 WL 2784516, at *4. Arbaugh, conversely, concerned the employee-numerosity requirement in Title VII, which is separate and apart from conciliation, and does not disturb Pierce Packing's holding relating to the conciliation requirement. That provision, 42 U.S.C. § 2000e(b), is in a section dealing with definitions, whereas the conciliation provision, § 2000e-5(b), and the

54

provision authorizing the EEOC to file a civil action, § 2000e-5(f)(1), are at least within the same section as the provision conferring jurisdiction on the federal district courts, § 2000e-5(f)(3).   Accordingly, this Court will not depart from the Ninth Circuit's clear and unequivocal pronouncement that conciliation is required to confer jurisdiction on this Court.

Nor does this district court's decision in <u>Global Horizons</u> compel a finding otherwise.   The Ninth Circuit recognizes that "'a district court opinion does not have binding precedential effect" on other district courts.'"   <u>United States v. Ensminger</u>, 567 F.3d 587, 591 (9th Cir. 2009) (quoting <u>NASD Dispute Resolution, Inc. v. Jud. Council of Cal.</u>, 488 F.3d 1065, 1069 (9th Cir. 2007) (citing <u>McGinley v. Houston</u>, 361 F.3d 1328, 1331 (11th Cir. 2004) ("The general rule is that a district judge's decision neither binds another district judge nor binds him, although a judge ought to give great weight to his own prior decisions.")).   In the face of the Ninth Circuit's construction of conciliation as a jurisdictional prerequisite, this Court does not follow <u>Global Horizons</u>'s departure from this circuit's precedent.

Accordingly, the Court is required, under <u>Pierce Packing</u>, to construe the conciliation provision as a pre-suit jurisdictional requirement.   The Court believes that the conciliation requirement must have meaning beyond a statutory

55

formality, and the EEOC must actually investigate the claims of discrimination and harassment and attempt to resolve the claims through good-faith conciliation.  The Court thus CONCLUDES that conciliation under Title VII is a jurisdictional precondition to filing suit.

    **B.**   **The EEOC's Attempt at Conciliation**

        The Court next considers whether the EEOC's conciliation efforts adequately satisfied Title VII's pre-suit requirement.[4]  This circuit has not articulated a standard for determining the sufficiency of conciliation.  As one district court in this circuit noted:

        The Ninth Circuit has not provided a

---

[4] The Court strikes the Declaration of EEOC Trial Attorney Amrita Mallik, attached to the EEOC's oppositions to both the ALTRES Motion and the La Rana Motion, to the extent it purports to attest to events of which the EEOC's counsel has no personal knowledge, including the EEOC's investigation of the underlying Charge and the EEOC's in-person conciliation with La Rana.  [Opp. to ALTRES Motion, Decl. of Trial Attorney Amrita Mallik (dkt. no. 41-1) at ¶¶ 2, 5, 6; Opp. to La Rana Motion, Decl. of Trial Attorney Amrita Mallik (dkt. no. 42-1) at ¶¶ 2, 5, 6, 15, 16.]

With regard to the EEOC's exhibits, the Court cautions the EEOC to comply with LR10.2 of the Local Rules of Practice of the United States District Court for the District of Hawai'i:

        (d) Exhibits, Declarations and Affidavits. Original documents and courtesy copies of exhibits, declarations, and/or affidavits shall have appropriately labeled tabs.  All exhibits attached to papers shall show the exhibit number or letter at the bottom of the first page of the exhibit.  Exhibits, declarations, and/or affidavits shall not contain cover sheets in lieu of tabs.

standard for district courts to apply when
evaluating whether the EEOC met its statutory
obligation to conciliate in good faith.
Other circuit courts have taken different
approaches.  Several circuits have adopted a
three-part test under which the EEOC fulfills
its duty to conciliate if it: "1) outlines to
the employer the reasonable cause for its
belief that the employer is in violation of
the Act, 2) offers an opportunity for
voluntary compliance, and 3) responds in a
reasonable and flexible manner to the
reasonable attitude of the employer."  EEOC
v. Johnson & Higgins, Inc., 91 F.23d 1529,
1534 (2d Cir. 1996); see also EEOC v.
Asplundh Tree Expert Co., 340 F.3d 1256, 1259
(11th Cir. 2003); EEOC v. Klinger Electric
Corp., 636 F.2d 104, 107 (5th Cir. 1981).
The Sixth Circuit has taken a more
deferential approach that focuses on whether
the EEOC made an attempt to conciliate,
without examining the substance of the
conciliation efforts.  EEOC v. Keco Indus.,
Inc., 748 F.2d 1097, 1102 (6th Cir. 1984).
The Sixth Circuit has not provided a standard
district courts should apply, but has
emphasized that the "form and substance of
[the EEOC's] conciliations is within the
discretion of the EEOC as the agency created
to administer and enforce our employment
discrimination laws and is beyond judicial
review."  Id.

     District courts within the Ninth Circuit
have applied both the deferential approach
taken by the Sixth Circuit in Keco and the
three-part test applied by other circuits.
See Timeless Investments, Inc., 2010
WL3220306 at *10.  Some courts have ruled
that the EEOC fulfills the conciliation
requirement if it "provides the employer an
opportunity to confront all issues."  EEOC v.
Lawry's Restaurants, Inc., 2006 WL 2085998,
*2 (C.D. Cal. 2006).  Other courts have
stated that "the fundamental question is the
reasonableness and responsiveness of the
EEOC's conduct under all the circumstances."
Asplundh, 340 F.3d at 1259 (quoting Klinger,

636 F.2d at 107).

> Although courts have taken different
> approaches when evaluating the EEOC's duty to
> engage in conciliation, there is no
> disagreement that the statutory duty is a
> real one rather than a mere formality, and
> that the underlying goal is to encourage
> settlements.  The Ninth Circuit has
> interpreted the statute to mean that
> conciliation is "the preferred means of
> achieving the objectives of Title VII."
> Pierce Packing Co., 669 F.2d at 609.  The
> Eleventh Circuit has stated that "the duty to
> conciliate is at the heart of Title VII.  It
> clearly reflects a strong congressional
> desire for out-of-court settlements of Title
> VII violations."  Asplundh, 340 F.3d at 1259.
> "The courts have interpreted the statute to
> mean precisely what it says.  Nothing less
> than a 'reasonable' effort to resolve with
> the employer the issues raised by the
> complainant will do."  Id. (internal
> citations omitted).  The Fifth Circuit has
> similarly stated that conciliation "is one of
> the most essential functions of the EEOC."
> Agro Distribution, 555 F.3d at 468 (internal
> citation and quotation marks omitted).

EEOC v. High Speed Enter., Inc., No. CV-08-01789-PHX-ROS, 2010 WL

8367452, at *2-3 (D. Ariz. Sept. 30, 2010).

The Court need not decide the appropriate standard,

because, under either the deferential approach or the Sixth

Circuit's three-part approach, the Court finds that the EEOC

failed to conciliate in good faith when it failed to provide

either Defendant with any information with which they could

evaluate the EEOC's claims.  See EEOC v. Bloomberg, L.P., 751 F.

Supp. 2d 628, 642 (S.D.N.Y. 2010) ("the EEOC cannot, when the

employer reasonably asks for information to formulate a monetary

counteroffer, make substantial monetary demands and require employers simply to pony up or face a lawsuit"). For example, despite Defendants' repeated requests, the EEOC did not furnish information regarding the class of unnamed "aggrieved individuals," the allegedly unlawful acts, or any other fact that would put Defendants on notice of the class or its claims. The EEOC's obstinate refusal to offer any information, including the results of its investigation, does not demonstrate "a willingness to work toward settlement," because "a fundamental element of working toward settlement is providing a reasonable amount of information to make settlement a possibility." See High Speed Enter., 2010 WL 8367452, at *5. The statute requires EEOC to conduct conciliation and therefore Congress must have intended it to be done in a meaningful way. In order to be meaningful, conciliation must have context and provide for an exchange of relevant and specific information between the parties. It is no surprise that Defendants, faced with little information, were unwilling to entertain the EEOC's "take-it-or-leave-it" offer. The EEOC cannot expect employers to make substantial offers of settlement when they are provided with no information with which to evaluate their liability.

At the hearing on the present Motions, the Court asked counsel for the EEOC to point out where, in the record, the EEOC provided Defendants with any information with which they could

reasonably evaluate the EEOC's claims.  Although counsel referred to a number of correspondence attached as exhibits, she was unable to show that the EEOC provided Defendants with anything more than generalities, instead insisting that the correspondence built upon prior correspondence and the initial Charge.  Counsel requested that the Court consider the correspondence in "a holistic sense," but could not identify any particular instance where Defendants received information other than the names of the Claimants and the fact that they allege sexual harassment and discrimination.  [Tr. of 7/30/12 Hrg., filed 7/31/12 (dkt. no. 49), at 40-61.]  The Court finds that, based on the correspondence supplied by the parties, the EEOC did not provide Defendants with sufficient information to understand or evaluate the claims.  The Court thus CONCLUDES that the EEOC failed to conciliate in good faith.

In the event that the EEOC fails to satisfy its pre-suit conciliation obligation, the EEOC should be provided the opportunity to cure any defect in the process:

> Conciliation is a condition precedent that the EEOC must satisfy before filing suit. EEOC v. Pierce Packing Co., 669 F.2d 605, 607 (9th Cir. 1982).  In the event the court finds that the EEOC failed to adequately conciliate the claims, the remedy is to stay the action in order to allow the EEOC an opportunity to comply with its statutory conciliation duties.  EEOC v. Zia Company, 582 F.2d 527, 533 (10th Cir. 1978) (in the event court finds conciliation efforts inadequate, district court should stay the

proceedings pending "further conciliation efforts") . . . .

EEOC v. Hometown Buffet, Inc., 481 F. Supp. 2d 1110, 1113 (S.D. Cal. 2007) (some citations omitted).

The Court thus STAYS the present action and ORDERS the EEOC to redo the conciliation process with both ALTRES and La Rana.  The EEOC is instructed to provide Defendants with information such as the number or identity of Claimants identified during its investigation, specific incidents of harassment or discrimination, and any other information reasonably necessary for Defendants to evaluate the claims and formulate a reasonable offer of settlement.

## II.  **Adequacy of the Complaint**

Even if Arbaugh supersedes Pierce Packing such that conciliation is not a jurisdictional requirement, the Court must still determine whether the EEOC's claims are adequately pled so as to survive a Rule 12(b)(6) motion to dismiss.

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  In its current form, the Complaint does not allege facts sufficient to state a claim for relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The EEOC fails to offer sufficient facts concerning its substantive claims that would enable "the court to draw the

61

reasonable inference that the defendant is liable for the misconduct alleged." See Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). First, the Court finds that the EEOC fails to distinguish between ALTRES and La Rana. Although the Complaint notes that ALTRES contracted with La Rana only between June 2007 and December 2008, the majority of the Complaint refers collectively to "Defendants" without distinction between the two parties. This problem is compounded by the fact that the EEOC alluded in the hearing on this issue that its claim against ALTRES may encompass other workplaces. [Tr. of 7/30/12 Hrg. at 39.] The EEOC must allege specifically what wrongdoing it is assigning to each Defendant. If the EEOC intends to proceed on a theory of joint employer liability, it must allege facts sufficient to support its contention that both Defendants controlled the terms and conditions of the Claimants' employment. See EEOC v. Pac. Mar. Ass'n, 351 F.3d 1270, 1275-77 (9th Cir. 2003).

Relatedly, the Complaint also fails to identify dates of the alleged harassment and discrimination. Other than to allege that the relevant events took place "[s]ince at least in or about 2007," [id. at 19,] the EEOC does not identify when the acts allegedly occurred. The timeline of events may prove significant, given that ALTRES was allegedly not under contract with La Rana after December 2008.

62

The Complaint also offers little information regarding the identity of the alleged harassers.  Other than references to "the owner," [Complaint at ¶ 20(a),] and "Senor Frog's Human Resource Manager," [id. at 23(c),] the remainder of the Complaint refers collectively to "Defendant Employers," "management officials," and "employees."  Again, the EEOC cannot offer broad generalizations and must allege specifics with regard to the identities of the alleged harassers.

With regard to the assertion that Colletto was constructively discharged, the Court finds that the Complaint alleges insufficient facts to support this claim.  The Complaint offers only one allegation directly related to constructive discharge:

> Defendant Employers constructive discharge
> Charging Party's employment in retaliation
> for engaging in a protected activity.  [sic]
> The officials who were engaged in her
> constructive discharge knew of her complaints
> regarding the sexual harassment.  Similarly
> situated employees who did not complain of
> any type of harassment were not subject to
> reduced work hours, less favorable working
> conditions, termination or intolerable
> working conditions too intolerable to
> continue working.

[Complaint at ¶ 21(c).]  This allegation fails to allege "the element that requires the plaintiff to have actually quit."  See Hubbard v. Bimbo Bakeries USA, Inc., 207 Fed. Appx. 607, 609 (9th Cir. 2008).  Even assuming that Colletto resigned, the Complaint does not allege that any Claimant in the present litigation

suffered such intolerable working conditions that she was forced to resign.  Even accepting the EEOC's argument that its claim of constructive discharge is part of a larger claim of discrimination, the currently pled facts allege an aggregate of harassment and discrimination claims and do not indicate that any female employee was subject to harassment creating such intolerable working conditions that she was forced to resign.

Regarding Defendants' arguments that the Complaint fails to allege sufficient facts in support of the claims for disparate treatment and retaliation, the Court finds that the Complaint, while sometimes general, alleges sufficient information regarding the nature of those claims to meet the pleading standard in <u>Iqbal</u> and <u>Twombly</u>.  For example, the Complaint alleges specific facts related to disparate treatment on the basis of the Claimants' gender, [Complaint at ¶¶ 22-23,] and retaliation against Claimants in response to complaints of a hostile work environment [<u>id.</u> at ¶ 21].  With the exception of the deficiencies discussed above, these allegations are otherwise sufficient to state claims for disparate treatment and retaliation.

The Court thus FINDS that the Complaint fails to meet the pleading standards of <u>Iqbal</u>, <u>Twombly</u>, and Rule 8.  The Court GRANTS the EEOC leave to amend the Complaint to cure the defects discussed herein after it fulfills its conciliation obligation.

64

The Court expects that, by disclosing more information during conciliation and in the First Amended Complaint, the EEOC will provide Defendants and the Court with a fuller picture of its claims of harassment and discrimination.

## CONCLUSION

On the basis of the foregoing, ALTRES's Motion to Dismiss Complaint Filed December 30, 2011, filed on March 15, 2012 is GRANTED to the extent it seeks dismissal of the Complaint and DENIED to the extent it requests that the Court not grant leave to amend. La Rana's Motion to Dismiss Complaint Filed December 30, 2011, filed on April 26, 2012, is HEREBY GRANTED. The present action is STAYED pending the parties' good-faith conciliation. Upon completing proper conciliation, the EEOC may file a First Amended Complaint no later than **November 1, 2012**. The Court CAUTIONS the EEOC that, if it fails to file its First Amended Complaint by **November 1, 2012,** the claims that this Order dismissed without prejudice will be automatically dismissed with prejudice. Further, if the EEOC's First Amended Complaint fails to cure the defects identified in this Order or adds new parties, claims, facts, or theories of liability, this Court may dismiss those claims with prejudice.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 22, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

EEOC V. LA RANA HAWAII, LLC, ETC., ET AL; CIVIL NO. 11-00799 LEK-BMK; ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT ALTRES, INC.'S MOTION TO DISMISS COMPLAINT FILED DECEMBER 30, 2011 AND (2) GRANTING DEFENDANT LA RANA HAWAII, LLC'S MOTION TO DISMISS COMPLAINT FILED DECEMBER 30, 2011