ANNA Y. PARK, CA SBN 164242
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 E. Temple Street, 4th Floor
Los Angeles, California 90012
Telephone: (213) 894-1080
Facsimile: (213) 894-1301
E-mail: lado.legal@eeoc.gov

AMRITA MALLIK, CA SBN 249152
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
300 Ala Moana Boulevard, 7th Floor
Honolulu, Hawaii 96850
Telephone: (808) 541-3133
Facsimile: (808) 541-3390
E-mail: amrita.mallik@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LA RANA HAWAII, LLC D/B/A SENOR FROG'S and ALTRES, INC.; and DOES 1-15, INCLUSIVE;<br><br>Defendants. | Civil No. CV 11-00799 LEK BMK<br><br>**FIRST AMENDED COMPLAINT**<br>• **CIVIL RIGHTS**<br>• **EMPLOYMENT DISCRIMINATION**<br>**(42 U.S.C. §§ 2000e, et seq.)**<br><br>**JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex (female), and retaliation, and to provide appropriate relief to a class of female employees similarly situated to Charging Party Heather Colletto (collectively, the "Claimants"), young women employed at the Senor Frog's restaurant in Waikiki, who were adversely affected by such practices.

As alleged with greater particularity in paragraphs 24 through 28 herein, Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC" or the "Commission") alleges that Defendants La Rana Hawaii, LLC d/b/a Senor Frog's; Altres, Inc. and Does 1 through 15 ("Defendant Employers") engaged in unlawful discrimination when they subjected the Claimants to unwelcome physical and verbal sexual conduct which was sufficiently severe or pervasive to adversely affect the terms and conditions of their employment and create a hostile work environment. Defendant Employers also subjected Claimants to disparate treatment, and constructive discharge on the basis of sex (female). The EEOC further alleges that Defendant Employers subjected Claimants to unlawful retaliation when they reduced their work hours, subjected them to unfavorable terms and conditions of employment and/or terminated their employment for opposing the hostile work environment, a statutorily protected activity.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Hawaii.

PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant La Rana Hawaii, LLC d/b/a Senor Frog's ("La Rana") has continuously been a Hawaii corporation doing business in the State of Hawaii and has continuously had at least 15 employees.

5. At all relevant times, Defendant La Rana has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Altres, Incorporated ("Altres") has continuously been a Hawaii corporation doing business in the State of Hawaii and has continuously had at least 15 employees

7. At all relevant times, Defendant Altres has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

8. Between at least July 2007 and December 2008, Defendant Altres had continuously been under contract with Defendant La Rana for services rendered in Hawaii.

a) The contract, titled Human Resources Services Agreement ("Agreement"), "covers the workforce administratively employed by ALTRES and working at [La Rana's] workplace ("Workforce Employees")."

b) The Agreement further specified that Altres was responsible for the "administrative" employment of Workforce Employees, which includes responsibility for "employment-related laws" as they apply to those Workforce Employees.

c) The Agreement further specified that La Rana was responsible for the "workplace and supervision and control of the Workforce Employees."

9. During the term of the Agreement between at least July 2007 and December 2008, Defendant Altres has continuously been a joint employer with Defendant La Rana where both generally controlled the terms and conditions of the employment of the Claimants.

a) Defendants shared centralized control over labor relations and interrelated operations.

(i) Defendants jointly hired and maintained the employment of non-management employees, including the EEOC Claimants, from at least June 2007 to the end of their human support service agreement on or about December 28, 2008.

(ii) La Rana and Altres shared common management over non-management employees including the EEOC Claimants. La Rana and Altres agreed that all but management employees were employees of both Altres and La Rana.

(iii) Per the Human Resources Services Agreement, both La Rana and Altres had the authority to hire, discipline, communicate with, compensate or terminate non-management employees.

b) Defendants La Rana and Altres were responsible for jointly developing and implementing an employee handbook which sets out all employment policies and procedures including anti harassment

policies and the complaint procedure. This joint handbook was supposed to be provided to all individuals employed between June 2007 and December 2008. The handbook expressly identified both employers and discussed the control each Defendant had over the employees and the terms and conditions of employment in the workplace.

(i) The sexual harassment policies and employment regulations contained in the joint employee handbook were created by Altres. Employees were directed to make their complaints to La Rana's human resource manager and general manager and to an Altres human resource specialist.

(ii) Altres was responsible for receiving and responding to employee complaints of discrimination. For example, when Defendants received the EEOC's charge of discrimination underlying this suit, Altres conducted the internal investigation, made a determination and recommendations as to what La Rana should do regarding the offending management employees. Furthermore, Altres received complaints from at least four of the EEOC Claimants and, in at least one situation, conducted an investigation, made a determination and recommendations as to what La Rana should do regarding the offending management employees.

c) As alleged in greater detail in paragraphs 8 – 9, Defendants shared common general control over the terms and conditions of employment of the Claimants during the time period between June 2007 and December 2008.

10. After the termination of the Agreement between Altres and La Rana on or about December 28, 2008 and until the present, Defendant La Rana retained

all responsibilities as an employer and controlled the general terms and conditions of employment for its employees in Hawaii, including all EEOC Claimants employed by La Rana from January 1, 2009 until the present.

11. EEOC asserts a right to relief jointly, severally, or out of the same transaction or series of transactions against Defendants La Rana and Altres. Additionally, questions of law or fact common to all Defendants will arise in this action. Joint Employers are named as parties pursuant to Rule 20(a)(2) of the Federal Rules of Civil Procedure in that Defendant La Rana and Altres, during the term of their Agreement between June 2007 and December 2008, acted as joint employers with regard to the relevant Claimants.

12. Defendants La Rana and Altres are both named as necessary parties to this action because either party's absence would deprive the court of the ability to grant the complete relief sought by the EEOC. As such, Defendants are both named as parties pursuant to Rule 19(a)(1)(A) of the Federal Rules of Civil Procedure

13. The EEOC brings this suit in its name on behalf of the EEOC Claimants, who are not parties to this lawsuit. The EEOC Claimants include a class of at least ten young women in their teens and early twenties, who were jointly employed by Defendants Altres and La Rana between June 2007 and December 2008 at the Senor Frog's restaurant in Waikiki. The Claimants were employed as bartenders, servers and hostesses.

14. The EEOC Claimants also include a class of young women employed by Defendant La Rana as bartenders, servers and hostesses during the time period from January 2009 until the present.

15. The EEOC brings this suit on behalf of the Claimants alleging that both Defendants are jointly and severally liable for the discrimination suffered by the Claimants who were employed during the June 2007 and December 2008 timeframe. The EEOC further alleges that Defendant La Rana is liable for the

continuing discrimination suffered by the Claimants who were employed between January 2009 and the present.

16. Plaintiff is ignorant of the true names and capacities of each Defendant sued as DOES 1 through 15, inclusively, and therefore Plaintiff sues said defendants by fictitious names. Plaintiff reserves the right to amend the complaint to name each DOE defendant individually or collectively as they become known. Plaintiff alleges that each DOE defendant was in some manner responsible for the acts and omissions alleged herein and Plaintiff will amend the complaint to allege such responsibility when the same shall have been ascertained by Plaintiff.

17. All of the acts and failures to act alleged herein were duly performed by and attributable to each DOE, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise, and/or under the direction and control of the another DOE and/or named Defendant, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each DOE participated in, approved and/or ratified the unlawful acts and omissions by another DOE or Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by a DOE or DOES, such allegations and reference shall also be deemed to mean the acts and failures to act of each DOE and named Defendants acting individually, jointly, and/or severally.

CONDITIONS PRECEDENT

18. More than thirty days prior to the institution of this lawsuit, Heather Colletto filed a charge with the EEOC alleging that she and a class of female employees were victims of violations of Title VII, including sexual harassment, disparate treatment and retaliation, by Defendant Employers La Rana and Altres.

19. The Commission investigated the charge against La Rana. La Rana participated in the investigation by responding with a position statement,

providing responses to the Commission's requests for information, providing some members of its management for interviews and providing information to support its claims.

20. The Commission investigated the charge against Altres. Altres participated in the investigation by responding with a position statement, providing responses to the Commission's requests for information and providing information to support its claims.

21. The Commission issued a Letter of Determination finding that Defendant Employers subjected Charging Party and a class of other similarly situated female employees to a sexually hostile work environment, disparate treatment, and constructive discharge in violation of Title VII. The EEOC further determined that Defendant Employers subjected the Charging Party and similarly situated class members to retaliation for engaging in a protected activity.

22. Prior to instituting this lawsuit, the EEOC attempted to eliminate the unlawful employment practices herein alleged and to effect voluntary compliance with Title VII through informal methods of conciliation, conference, and persuasion within the meaning of Section 706(b) of Title VII, 42 U.S.C. § 2000e-5(b). The Commission engaged in good faith attempts at conciliation, including conducting multiple rounds of negotiation and in-person conciliation conferences with representatives for both Defendant Employers. The parties' conciliation efforts proved unsuccessful.

23. As detailed in paragraphs 17 through 22 above, all conditions precedent to the institution of this lawsuit have been fulfilled.

<u>STATEMENT OF CLAIMS</u>

24. Since on or about June 1, 2007 until about December 28, 2008, Defendants La Rana and Altres have jointly engaged in unlawful employment practices at their Honolulu, Hawaii location in violation of Sections 703 and 704 of Title VII, 42 U.S.C. §§ 2000e-2 and 2000e-3.

25. Since at least in or about 2007 until the present, Defendant La Rana has engaged in unlawful employment practices at its Honolulu, Hawaii location in violation of Sections 703 and 704 of Title VII, 42 U.S.C. §§ 2000e-2 and 2000e-3.

**Count 1: Sexual Harassment, Hostile Work Environment**

26. Defendant Employers violated Section 703 of Title VII when they subjected the EEOC Claimants, a class of female employees similarly situated to the Charging Party, to unwelcome sexual conduct, constructive discharge, and disparate treatment against females by Defendant La Rana's owner, high level executives, management and employees and by Defendant Altres human resources employees. The sexual conduct was sufficiently severe and pervasive to adversely affect the terms and conditions of their employment and create a hostile, abusive work environment.

a) The sexual harassment was conducted by Defendant La Rana's management, including without limitation Damien Jimenez, Tona Risso, Carlito Alvarez, Salvador Carpinteyro and Juano Delgado. The sexual harassment was also conducted by high level executives of La Rana's management, including CEO David Krouham, Owner Alejandro Shoer and high level executive Abelardo Juarez.

b) As further described in paragraph 26(f), the Claimants reported the harassment directly to Altres human resources employees, as they were directed by the employee manual. As referenced above in paragraphs 8-9, Altres provided human resources services to La Rana and functioned as the human resources department for the Claimants. Despite receiving complaints of harassment at the Senor Frog's restaurant, Altres failed to take prompt and effective remedial action and allowed the harassment to continue unchecked. At this time, the EEOC is unaware of the names of the Altres human resources staff designated to work with La Rana.

c) The sexual harassment consisted of both verbal and physical conduct of a sexual nature.

(i) The verbal sexual harassment includes, but is not limited to, the owner Alejandro Shoer telling a female server that watching her in a skirt made him have an erection, commenting that she liked to swallow in reference to oral sex and openly making similar comments to other female employees and customers. Management officials, including upper level officials named in paragraph 26(a), similarly made inappropriate and offensive sexual comments, sexual advances and demanded sexual intercourse and favors of their female subordinates. Management officials including Damien Jimenez, Tona Risso and Salvador Carpinteyro would make frequent sexual comments about the Claimants' and female customers' bodies, especially their breasts.

(ii) Management officials would routinely participate in sexually inappropriate behavior with the Claimants at the Senor Frog's restaurant. Male managers would regularly demand that bartender Claimants serve them body shots off of the Claimants and female customers. Male management officials would participate in sexual activity with female customers while on duty and in the presence of the Claimants. Manager Damien Jimenez exposed his penis to at least one Claimant. Male managers were routinely encouraging Claimants, many of whom were under the legal drinking age at the time, to drink alcohol with them. Claimants understood that their male managers wanted to get them drunk so the Claimants would participate in sexual activity with the managers. In addition, when high level executives from Senor Frog's, including Krouham, Juarez and Shoer, would visit the Honolulu location, at least two

Claimants were encouraged and even directed to have sex with the high level executives by local Honolulu management for La Rana.

(iii) Male managers, including those listed in paragraph 26(a), also physically sexually harassed the Claimants. The physical sexual conduct included male management officials groping females' breasts and buttocks, leering at the Claimants and making them very uncomfortable, and brushing up against the Claimants' bodies. Damien Jimenez, a bar manager, would routinely brush up against the Claimant bartenders' backsides and rub up against them while they were working. He would also put his arms around them to grope them while they were working the cash register. Other Claimants were also subjected to physical groping by male managers. For example, one manager forcibly grabbed at least one Claimant as the manager thrust his hips back and forth simulating sexual intercourse.

d) The sexual harassment was unwelcome. Charging Party and other female employees were offended by the owner's, all levels of management's and employees' sexually offensive and egregious conduct. They tried to avoid them, ignore them and/or rebuff the repeated sexual conduct and overtures to no avail. As described below in further detail in paragraph 26(f), they also complained to management officials of both of the Defendant Employers in an effort to stop the unwelcome conduct.

e) The sexual harassment was sufficiently severe or pervasive to create a hostile work environment. The sexual conduct described in Paragraph 26(c) was pervasive in the workplace as it occurred on a daily basis. The sexual conduct was severe as it included sexual

advances, demands for sexual favors, graphic sexual comments, and highly offensive physical touching of a sexual nature.

f) Defendant Employers are liable for the hostile work environment created by the harassing officials in each's capacity as owner, high level executive, and/or management.

(i) The Claimants took reasonable steps to stop the sexual harassment when they complained to several management officials of the Defendant Employers, including La Rana management and Altres human resources employees. However, Defendant Employers failed to take reasonable steps to prevent and correct the harassment, but instead engaged in tangible employment actions of reducing the female employees' hours, giving them less favorable working conditions, terminating them and/or causing their constructive discharge.

(ii) Even upon learning of the harassment through the EEOC charge of discrimination, Defendant Employers' response was equally ineffective as the harasser was never disciplined, the harassment continued and the harasser was only separated from Heather Colletto in an ineffective manner. Similarly, Defendant Employers received additional complaints of harassment and discrimination directly from at least two Claimants, but failed to effectively respond, allowing the harassment to continue unchecked in the workplace.

(iii) Furthermore, Defendant Employers knew or should have known of the harassment because other management witnessed the harassment, engaged in it, and Charging Party and other Claimants complained to Defendant Employers about the harassment, but Defendant Employers failed to take effective, remedial action.

**Count 2: Retaliation**

27. Defendant Employers violated Section 704 of Title VII when they subjected Charging Party and other female employees to unlawful retaliation for complaining of the hostile work environment.

a) Charging Party and other female employees engaged in a protected activity when each opposed the unlawful sexual harassment by complaining about it to the Defendant Employers' management officials and requesting that they take action to stop it.

(i) Management officials for Defendant La Rana include without limitation Damien Jimenez, Tona Risso, Carlito Alvarez, Salvador Carpinteyro and Juano Delgado. Management officials for Defendant Altres include Altres human resources employees designated to work with La Rana whose names are at this time unknown to the EEOC.

b) Defendant Employers subjected Charging Party and other female employees to an adverse employment action when they reduced the female employees’ work hours, gave them less favorable working conditions, harassed them at work to the point of making the workplace too intolerable to work or terminating their employment.

(i) At least two Claimants had their hours reduced after complaining to management for both Defendant Employers of the discrimination they had suffered.

(ii) Several Claimants had their hours cut, shifts reduced, and began to receive less favorable work assignments such as assignments in areas that were less crowded and therefore less income producing, after turning down sexual propositions by their male managers.

(iii) Claimants faced increased hostility and harassment from male management after engaging in the protected activity of complaining of the discrimination they suffered.

c) Defendant Employers constructively discharged at least two Claimants' employment in retaliation for engaging in a protected activity. The officials who were engaged in their constructive discharge knew of her complaints regarding the sexual harassment. After complaining, the Claimants faced intolerable work conditions created by increased hostility and harassment from male management and such a severe reduction in work hours that they had no choice but to seek other employment.

d) Similarly situated employees who did not complain of any type of harassment were not subject to reduced work hours, less favorable work conditions, termination or intolerable working conditions too intolerable to continue working.

e) Female employees, including the Claimants, witnessed the adverse employment actions taken against those women who did come forward and complain. This contributed to an environment of retaliation that left several female employees too afraid to come forward and complain out of fear that they would be subjected to having their hours cut, being given less favorable work assignments, facing increased hostility and harassment from male managers, or even losing their job.

**Count 3: Disparate Treatment**

28. Defendant Employers violated Section 703 of Title VII when they subjected Charging Party and a class of other similarly situated female employees to disparate treatment.

a) The EEOC Claimants are young females employed at Senor Frog's bar and restaurant. They were in their teens and early twenties at the time of their employment.

b) The Claimants were equally qualified to and at times had more experience than their male counterparts.

c) Defendant Employers' management gave female employees shorter work shifts, less desirable work assignments, fewer opportunities to earn income, and were failed to be considered for promotions in comparison with similarly situated male employees.

(i) Defendant La Rana's management includes without limitation Damien Jimenez, Tona Risso, Carlito Alvarez, Salvador Carpinteyro and Juano Delgado. Management officials for Defendant Altres include Altres human resources employees designated to work with La Rana whose names are at this time unknown to the EEOC.

(ii) Female employees, including the Claimants, were routinely assigned fewer shifts and less lucrative shifts than their male counterparts. If management determined that it was a slow shift and people should be sent home, female employees like the Claimants were always sent home first.

(iii) Female employees who were employed as servers, including the Claimants, were not allowed to work certain areas alone while men were regularly assigned areas alone. In addition, if their sections became busy, Claimants who were employed as servers would have their busy sections reassigned to their male counterparts by management. This allowed male server employees to earn more than the Claimants.

(iv) Similarly, Claimants who were employed as bartenders were made to work at the less popular side and back bars while their male counterparts were always assigned the busy center bar, allowing the men to earn more income in tips. Furthermore, the female Claimants were not provided assistance in the form of additional staff or "bar backs" the way their male counterparts were supported, making it more difficult for the female Claimant bartenders to get their jobs done.

(v) At least two bartender Claimants were routinely passed over for promotion to bar manager in favor of equally or less experienced male bartenders.

(vi) Several female Claimants who were employed as servers and hostesses felt that they were bullied by male managers more so than their male counterparts.

(vii) Defendant Employers' conduct created an environment of rampant male favoritism where it was made clear that female employees were not valued as much as their male counterparts. For example, La Rana's Human Resource Manager made Defendant Employers' anti-female animus clear when at a meeting wherein other management explored the possibilities of hiring additional female bartenders, the Human Resources Manager disapprovingly rejected the idea saying he did not want more females as they were too much "drama".

d) Defendant Employers were made aware of the disparate treatment in the workplace. The Claimants took reasonable steps to stop the disparate treatment when they complained to several

management officials of the Defendant Employers, including La Rana's management and Altres human resources employees. However, Defendant Employers failed to take reasonable steps to prevent and correct the discrimination, allowing the disparate treatment to continue unchecked.

**Effects of Unlawful Employment Practices**

29. The effect of the practices complained of, as described above, has been to deprive the EEOC Claimants, a class of similarly situated employees to the Charging Party, of equal employment opportunities and otherwise adversely affect their status as employees, because of their sex, female.

30. The effect of the practices complained of, as described above, has been to deprive the EEOC Claimants of equal employment opportunities and otherwise adversely affect their status as employees because of the their protected activity.

31. The unlawful employment practices complained of in paragraphs 24 through 28 above were intentional.

32. The unlawful employment practices complained of in paragraphs 24 through 28 above were done with malice or with reckless indifference to the federally protected rights of Charging Party and the Claimants

33. As a direct and proximate result of the acts of Defendant Employers as described above, the EEOC Claimants have suffered pain and suffering, inconvenience, loss of enjoyment of life, humiliation and damages, all to be proven at trial.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employers, their respective officers, assigns, agents, alter ego, joint employer, integrated enterprise, successors, and all persons in active concert or participation with them, from

engaging in any employment practices, which discriminate on the basis of sex and retaliation;

B. Order each Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities, and which eradicate the effects of its past and present unlawful employment practices;

C. Order Defendant Employers to make the Claimants whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful-place reinstatement or front pay.

D. Order Defendant Employers to make the Claimants whole by providing the appropriate past and future pecuniary losses, and/or other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices;

E. Order Defendant Employers to make the Claimants whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained as described above, including, but not limited to pain and suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

F. Order Defendants to pay the Claimants punitive damages for its malicious and /or reckless conduct as described above, in amounts to be determined at trial;

G. Grant such further relief as the Court deems necessary and proper in the public interest; and

H. Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: November 1, 2012

Respectfully Submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, NE
Washington, DC 20507

By: /s/ Anna Y. Park
ANNA Y. PARK
Regional Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Los Angeles District Office
(213) 894-1080